VANDENTOORN v BONNER

Docket No. 62904. Submitted April 7, 1983, at Grand Rapids.—Decided September 27, 1983. Leave to appeal applied for.

Albert VandenToorn, doing business as Lemson's Wrecker Service, bid for and secured in 1971 a contract with the City of Grand Rapids which granted him exclusive rights to furnish wrecker services for disabled, impounded, and abandoned vehicles. The contract was renewed in 1972, 1973, and 1975. The contracts contained provisions establishing maximum fees for various services; however, because of consumer complaints, the 1975 contract contained a provision for investigation, mediation, and resolution of complaints by the Grand Rapids Better Business Bureau. On April 29, 1976, Robert W. Bonner, President of the Grand Rapids Better Business Bureau, after a meeting with the city manager, told newsmen that Vanden-Toorn had violated the city contract by charging excessive fees. A portion of Bonner's interview thereafter was broadcast on a local television station, WOTV, and a newspaper article appeared in the Grand Rapids Press. After VandenToorn's attorney pointed out that the contract permitted higher fees for "accident hauls", Bonner indicated that it was these accident hauls which led him to conclude that VandenToorn had violated the contract. Bonner apologized to VandenToorn and a retraction was printed and broadcast the following day. VandenToorn filed a defamation action in Kent Circuit Court against Bonner, the Grand Rapids Better Business Bureau, and WOTV. Summary judgment was granted in favor of WOTV. Defendants Bonner and the Grand Rapids Better Business

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 50 Am Jur 2d, Libel and Slander §§ 125, 415, 455, 503.
   Constitutional aspects of libel or slander of public officials. 95 ALR2d 1450.
   Sufficiency of plaintiff's allegations in defamation action as to defendant's malice. 76 ALR2d 696.
[3] 50 Am Jur 2d, Libel and Slander §§ 174, 452, 454, 462.
[4] 50 Am Jur 2d, Libel and Slander § 251.
[5] 50 Am Jur 2d, Libel and Slander §§ 415, 416.
   61A Am Jur 2d, Pleading § 231.

Bureau moved for summary judgment, claiming qualified privilege and alleging, by way of a supporting affidavit, that the statements forming the basis of the suit had not been made with knowledge that they were false and had not been made with reckless disregard of whether the statements were true or false. George R. Cook, J., granted the motion for summary judgment of defendants Bonner and the Grand Rapids Better Business Bureau. Plaintiff appeals from that order of summary judgment. *Held:*

1. A public official or public figure may not recover damages for a defamatory falsehood relating to such person's public activities unless there is proof that the defamatory statement was made with actual malice.

2. Plaintiff, by seeking and securing the city towing contract and by actively injecting himself into controversies relating to that contract, is a public figure for the purposes of an action for defamation concerning statements relating to that public contract.

3. Actual malice in defamation actions involving public officials or figures is established by proof that the defamatory statement was made with knowledge that the statement was false or with reckless disregard of whether or not the statement is false.

4. The qualified privilege of a defendant in a defamation action by a public figure which exists with respect to statements concerning public figures is available to non-media defendants as well as media defendants.

5. Since plaintiff's pleadings failed to sufficiently establish a basis on which a jury could find that the statements were made with knowledge of their falsity or with reckless disregard of whether or not the statement was false, summary judgment for defendants was properly granted.

Affirmed.

1. LIBEL AND SLANDER — PUBLIC OFFICIALS — MALICE.

A public official may not recover damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with actual malice; a public figure, that is a person who because of fame or notoriety or because he injects himself or is drawn into a public controversy becomes intimately involved with public questions, may not recover damages for a defamatory falsehood relating to the issue or issues giving rise to his public status unless he proves the statement was made with actual malice.

2. LIBEL AND SLANDER — PUBLIC FIGURES — MALICE.

   A person who actively seeks and secures a public towing contract and actively injects himself into controversies relating to the towing contract is a public figure who may not recover damages in an action for defamation concerning statements relating to the towing contract unless he proves that the statements were made with actual malice.

3. LIBEL AND SLANDER — MALICE.

   Malice, in a defamation case, is established by proof that the defamatory statement was made with knowledge that it was false or with reckless disregard of whether it was false or not.

4. LIBEL AND SLANDER — QUALIFIED PRIVILEGE — NEWS MEDIA.

   The qualified privilege which requires proof of actual malice before a public official or public figure may recover damages in a defamation action is available to non-media defendants as well as media defendants.

5. LIBEL AND SLANDER — SUMMARY JUDGMENT — PLEADINGS — MALICE — QUALIFIED PRIVILEGE.

   Summary judgment in favor of a defendant in a defamation case brought by a public figure is properly granted where the plaintiff's pleadings are insufficient to raise a factual issue regarding the defendant's knowledge of the falsity of the statements or reckless disregard of whether the statements are true or false, since a jury may not properly draw the inference that the statements were made with actual malice under such pleadings so as to overcome the qualified privilege of the defendant (GCR 1963, 117.2[3]).

*Becker & Van Cleef* (by *Frank G. Becker),* and *Mark Granzotto,* for plaintiff.

*Baxter & Hammond* (by *Richard B. Baxter, R. Curtis Mabbitt* and *Robert Lipak),* for defendants.

Before: BEASLEY, P.J., and R. B. BURNS and T. C. MEGARGLE,* JJ.

PER CURIAM. On August 18, 1976, plaintiff, Albert VandenToorn, doing business as Lemson's

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Wrecker Service, filed a defamation action in the Kent County Circuit Court against defendants, Robert W. Bonner and the Grand Rapids Better Business Bureau.[1] On December 4, 1980, defendants filed a motion for summary judgment under GCR 1963, 117.2(3), asserting that plaintiff failed to present proof that Bonner, who was cloaked with a qualified privilege, made the statements with actual malice. From the trial court's grant of summary judgment, plaintiff appeals as of right.

Plaintiff, the owner and operator of an automobile towing and wrecker service, successfully bid for a contract with the City of Grand Rapids in 1971 which granted him the exclusive right to furnish wrecker services for disabled, impounded, and abandoned vehicles. This contract, which was renewed in 1972, 1973, and 1975, included provisions establishing maximum fees for the various services.

During the contractual periods, defendant Bonner, as President of the Grand Rapids Better Business Bureau, received numerous consumer complaints concerning the fees charged by plaintiff. In 1975, Bonner submitted a proposal to the city for a revision of the manner in which the city awarded contracts for wrecker services. While this proposal was not adopted, the 1975 contract between plaintiff and the city embodied a clause for the "investigation, mediation, and resolution" of complaints by the Better Business Bureau.

After investigating several consumer complaints regarding plaintiff's alleged charging of excessive fees, Bonner concluded that plaintiff was charging fees that exceeded the maximum allowed by the

---

[1] Also joined as a defendant was a television station, WOTV, for which the trial court granted summary judgment on September 12, 1980. Plaintiff does not raise any issues in reference to the dismissal of WOTV as a defendant.

contract. Approached by a Grand Rapids Press newspaperman after an April 29, 1976, meeting with the City Manager, Bonner told the newspaperman that plaintiff violated the towing contract by charging excessive fees. Thereafter, an article appeared in the Grand Rapids Press and a portion of the inteview was broadcast by a local television station, WOTV.

At a meeting held on April 30, 1976, plaintiff's attorney indicated to Bonner and the city manager that a provision in the contract authorized plaintiff to charge higher fees for certain "accident hauls". Agreeing that it was the accident hauls that led him to conclude that plaintiff violated the contract, Bonner apologized to plaintiff and a retraction was printed and broadcast on the following day.[2]

At the hearing on the summary judgment motion, defendant's attorney, relying on Bonner's deposition, argued that Bonner had no intent to

[2] On May 1, 1976, the following retraction appeared in the Grand Rapids Press:

"The Better Business Bureau publicly apologized Friday for its allegations that Lemson's Wrecker Service overcharges in violation of its contract with the city.

"However, Robert Bonner, bureau director, insisted that his organization's position as official arbitrator for complaints against Lemson's has not been compromised.

"The bureau, named in the Lemson's city contract as the arbiter, had charged the towing firm routinely billed car owners, for more than the amount specified in the document, assessed unauthorized 'clean up' fees and worded a disclaimer on a release form in a way that seemed to conflict with the contract.

" 'Short of a minor thing, I was dead wrong,' Bonner said after a meeting in City Manager Joseph Grassie's office with Lemson's owner Albert VandenToorn, Sr., and police officials.

"Bonner said he 'didn't understand' that towing invoices he used to back up his claims were not covered by the city contract.

" 'I guess I got overly aggressive,' Bonner said.

"His reference to the 'minor thing' concerned the disclaimer. Bonner said he still had questions about the statement, but added 'David Dodge (VandenToorn's attorney) is a fine counsel, if he feels it is not in conflict with the contract, I don't know what I can say.' "

injure plaintiff when he informed a reporter that plaintiff violated the contract.

On appeal, plaintiff maintains that the trial court erred in granting defendants' motion for summary judgment. Essentially, plaintiff argues that: (1) he is not a public figure who, as a precondition to recovering damages for defamation, must show that the speaker acted with actual malice, (2) the *New York Times v Sullivan*[3] standard of active malice does not apply in determining whether Bonner acted with malice in making the statements, (3) as a defendant who is not a member of the media, Bonner is not cloaked with qualified immunity, and (4) sufficient circumstantial evidence was presented by way of depositions and affidavits to allow a jury to determine that Bonner acted with actual malice in making the defamatory statements.

## I

*Is plaintiff a limited public figure for purposes of prohibiting recovery for allegedly defamatory statements unless defendant made the statements with knowledge that they were false or with reckless disregard of whether they were true or false?*

In *New York Times v Sullivan*,[4] the United States Supreme Court held that a public official may not recover damages for a defamatory statement regarding his official conduct unless the statement was made with actual malice:

"The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was

---

[3] 376 US 254; 84 S Ct 710; 11 L Ed 2d 686 (1964).

[4] 376 US 279-280.

made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

Three years after the *Sullivan* decision, the Supreme Court, in *Curtis Publishing Co v Butts*,[5] extended the constitutional privilege embracing public officials to include public figures. *Butts* involved two companion cases where media defendants appealed civil judgments for libel. The first case concerned the Saturday Evening Post's accusation that Wally Butts, then coach of the University of Georgia football team, conspired with the late Bear Bryant, then coach of the University of Alabama football team, to "fix" a football game between their universities. The second case involved an erroneous Associated Press account of Brigadier General Edwin Walker's participation in a campus riot. Since Butts' salary was paid by a private alumni association and Walker had retired from the Army, neither, strictly speaking, could be classified as a "public official". However, a divided Court by a 5 to 4 decision extended the constitutional privilege of *Sullivan* to protect non-public officials who "are nevertheless intimately involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large".[6]

In *Gertz v Robert Welch, Inc*,[7] Justice Powell, writing for the Court, said that the "public figure" classification could rest on one of two bases:

"In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More com-

[5] 388 US 130; 87 S Ct 1975; 18 L Ed 2d 1094 (1967).

[6] 388 US 164.

[7] 418 US 323, 351; 94 S Ct 2997; 41 L Ed 2d 789 (1974).

monly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions."

In our view, plaintiff is a public figure for the limited purpose of comments regarding his performance under the exclusive city contract. He actively sought to be awarded the contract between 1971 and 1975. As a consequence of numerous complaints made by consumers and businessmen during that period, media attention focused on the issue of alleged overcharging. Plaintiff was extensively quoted in reference to his responses to the criticism levied at him. Illustrative of this fact are articles which appeared in the Grand Rapids Press: (1) on June 12, 1972, plaintiff, in a three-column article, accused the Grand Rapids Police Department of diverting business from him, and he threatened to sue the city; (2) on October 24, 1973, in response to complaints from his competitors, plaintiff asserted, "We tried the first six months to let them tow away for free, but we ended up with stolen merchandise, damaged vehicles and even one car missing. These [his competitors] ain't friends."; and (3) on May 22, 1975, plaintiff reacted to a trademark infringement lawsuit instituted against him by scoffing at the suit and implying that it was instituted because of his contract with the city.

In *Peisner v Detroit Free Press*,[8] this Court quoted from the description of "public figure" delineated in *Gertz v Robert Welch, Inc:*[9]

" 'For the most part those who attain this status have

[8] 82 Mich App 153, 159; 266 NW2d 693 (1978).
[9] 418 US 345.

assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment.' "

Based on the factual setting in this case and the *Gertz* definition of "public figure", we find that plaintiff projected himself into the center of public controversy and pressing public concern, thereby precluding him from recovering for published defamatory statements about and concerning him except when made with malice.[10] Therefore, Bonner possesses a qualified immunity in reference to his comments about plaintiff.

## II

*Where the publication of allegedly defamatory statements is clothed with a qualified privilege, does the* New York Times v Sullivan *standard of actual malice apply to determine whether the immunity is overcome?*

Plaintiff maintains that, in the event that Bonner is cloaked with qualified immunity, the common-law definition of malice, rather than the *New York Times* standard of actual malice, applies. In *Wynn v Cole,*[11] we discussed the proper standard of

[10] See, generally, Anno: *Libel and Slander—Who's is a "public figure" in the light of Gertz v Robert Welch, Inc,* 75 ALR3d 616; Banberger, Public Figures and the Law of Libel, 33 Bus Lawyer 709 (1978).

[11] 91 Mich App 517, 523-524; 284 NW2d 144 (1979). The original *Wynn v Cole* decision is reported at 68 Mich App 706; 243 NW2d 923 (1976), where this Court remanded the cause to the trial court on plaintiffs' defamation claim against defendant. Also, see *Gaynes v Allen,* 128 Mich App 42; 339 NW2d 678 (1983), *Peisner v Detroit Free Press, Inc,* 82 Mich App 153, 164; 266 NW2d 693 (1978), and *Tumbarella v Kroger Co,* 85 Mich App 482, 495; 271 NW2d 284 (1978).

malice applicable to a publication that is protected by qualified immunity:

"On appeal, plaintiff correctly concedes that defendant's publication of the allegedly defamatory statements were clothed with a qualified privilege which can only be overcome by a showing of 'actual malice'. However, there is a split among the panels of this Court as to what is meant by 'actual malice'. Some cases define 'malice' as some species of ill will or bad faith. Others have adopted the definition set forth in *New York Times v Sullivan* and have concluded that malice is established by proof that the defamatory statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not'. Although previous decisions of the Michigan Supreme Court have employed the former definition, in the most recent pronouncement from that Court on the subject it appears to have adopted the *New York Times* definition. Therefore, notwithstanding dicta to the contrary in the initial appeal of this case, we will apply the *New York Times* standard to the case at bar." (Citations omitted.)

Based on *Wynn* and the other cases cited in fn 11, we reject plaintiff's argument and apply the *New York Times* standard of actual malice to defendants' qualified immunity.

### III

*Is a non-media defendant entitled to a qualified privilege regarding a defamatory publication that concerns a public official or public figure?*

Plaintiff asserts that a non-media defendant is not entitled to a qualified privilege when he defames a public official or public figure. In *Hutchinson v Proxmire*,[12] the United States Supreme Court noted that the issue of the application of the *New*

[12] 443 US 111, 133, fn 16; 99 S Ct 2675; 61 L Ed 2d 411 (1979).

*York Times* standard of actual malice to a non-media defendant has not been decided by that Court. Nevertheless, a reading of *Arber v Stahlin*[13] and *Postill v Booth Newspapers, Inc,*[14] reveals that the Michigan appellate courts have applied the *New York Times* actual malice standard to instances where a non-media defendant comments on the conduct of a public official or a public figure. The propriety of this standard is underscored here by the fact that Bonner, as President of the local Better Business Bureau, commented on plaintiff's performance under a city contract which generated extensive public controversy. Notably, Bonner recently had completed an investigation into the allegations that plaintiff violated the city contract by way of excessive fee charging.

Consequently, we hold that, where a non-media defendant publishes a statement concerning a public official or a public figure, he is clothed with a qualified immunity that only can be overcome by a showing of actual malice.

## IV

*Did the trial court err in granting defendants' motion for summary judgment?*

In *Lins v Evening News Ass'n,*[15] we had occasion to discuss the propriety of summary judgment motions in defamation cases:

"The constitutional underpinning of *New York Times v Sullivan* and its progeny are the First Amendment constitutional guarantees of freedom of speech and freedom of the press as applied to the states by the

---

[13] 382 Mich 300, 307-309; 170 NW2d 45 (1969), *cert den* 397 US 924; 90 S Ct 927; 25 L Ed 2d 103 (1970).

[14] 118 Mich App 608, 619; 325 NW2d 511 (1982).

[15] 129 Mich App 419, 424-426; 342 NW2d 373 (1983).

Fourteenth Amendment. They cut squarely across state libel laws. The state libel laws enjoy no 'talismanic immunity' from constitutional limitations. Freedom of expression upon public questions is secured by the First Amendment.

"In *New York Times v Sullivan, supra* [376 US 270-271], Justice Brennan goes on to expand his First Amendment thesis, saying:

" 'Thus we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials. * * *

" 'Authoritative interpretations of the First Amendment guarantees have consistently refused to recognize an exception for any test of truth—whether administered by judges, juries, or administrative officials—and especially not one that puts the burden of proving truth on the speaker.'

"A typical application of these principles is the following passage from *Meeropol v Nizer* [381 F Supp 29, 32 (SD NY, 1974)]:

" 'Summary judgment is particularly appropriate at an early stage in cases where claims of libel or invasion of privacy are made against publications dealing with matters of public interest and concern. In recognition of the constitutional privilege of free expression secured by the First and Fourteenth Amendments, the courts in libel actions have recognized the need for affording summary relief to defendants in order to avoid the "chilling effect" on freedom of speech and press.'

"We believe that, on summary judgment motions involving alleged libel of public officials or public figures by the media, if any advantage of the doubt is to be given, it must go to the media under First Amendment constitutional rights of free speech and free press." (Footnotes omitted.)

In the within matter, Bonner accompanied his motion for summary judgment with an affidavit in which he stated that, after completing investiga-

tion of the complaints made against plaintiff, he believed in good faith that the allegations of impropriety imputed to plaintiff were true. In his deposition, Bonner said that the reason he proposed a change in the manner in which the city awarded its towing contract was to alleviate a community problem. Bonner further said that he did not hold any animus toward plaintiff and that his proposal to alter the fashion in which towing contracts were awarded was not devised because of any personal problem with or prejudice against plaintiff's company.

While plaintiff's complaint avers actual malice on the part of Bonner, the answer, deposition, and affidavit of Bonner dispute the allegations that his comments concerning plaintiff were made with actual malice. The affidavit submitted by plaintiff in response to the motion for summary judgment was insufficient to raise a factual issue regarding Bonner's knowledge of the falsity of the statements or reckless disregard of whether they were true or false. We conclude that there was not enough evidence offered to allow a jury to draw an inference that Bonner committed the alleged defamation with actual malice.

Therefore, in view of our holding that plaintiff did not present sufficient evidence of actual malice, Bonner's qualified immunity is not overcome. The trial court's grant of summary judgment is affirmed.

Affirmed.