PETERFISH v FRANTZ

Docket No. 97555. Submitted January 31, 1988, at Grand Rapids.
    Decided April 18, 1988.

Evelyn Peterfish brought a libel action in Calhoun Circuit Court
    against Richard Frantz and the Calhoun County AFL-CIO
    Labor Council. The trial court, James C. Kingsley, J., granted
    summary disposition in favor of defendants, finding that plain-
    tiff, an employee of the City of Battle Creek, was a public
    official and that she needed to show, but did not, actual malice
    on defendants' part with regard to a letter written by defen-
    dant Frantz to plaintiff, copies of which were sent to various
    other city officials, charging plaintiff with dereliction of duty.
    Plaintiff appealed.

    The Court of Appeals *held*:

    1. A government employee such as plaintiff who has or
    appears to the public to have substantial responsibility for or
    control over the conduct of governmental affairs is a public
    official and as such may not recover damages for statements
    concerning her unless she can prove that the statement was
    made with actual malice, i.e., with knowledge that the state-
    ment was false or with reckless disregard of whether it was
    false or not.

    2. The presence or absence of actual malice was not a
    genuine issue of fact in this case which could have precluded
    summary disposition in favor of defendants in view of plaintiff's
    admission at deposition that she thought defendant Frantz

REFERENCES

Am Jur 2d, Libel and Slander §§ 3, 125 *et seq.*, 173-177, 192 *et seq.*,
    415.
Defamation: nature and extent of privilege accorded public state-
    ments, relating to subject of legislative business or concern, made
    by member of state or local legislature or council outside of
    formal proceedings. 41 ALR4th 1116.
Libel and slander: what constitutes actual malice, within federal
    constitutional rule requiring public officials and public figures to
    show actual malice. 20 ALR3d 988.
Libel and slander: Who is a public official or otherwise within the
    federal constitutional rule requiring public officials to show actual
    malice. 19 ALR3d 1361.

believed the statements in his letter were true and that she had no evidence to establish that he did not believe them to be true.

Affirmed.

1. LIBEL AND SLANDER — QUALIFIED PRIVILEGE — QUESTION OF LAW.

The initial determination of whether a defendant in an action for defamation is protected by a privilege is a question of law to be decided by the court.

2. LIBEL AND SLANDER — ACTIONS.

The following elements must be proven to demonstrate liability for defamation: (1) a false and defamatory statement concerning plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publishers; and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod).

3. LIBEL AND SLANDER — PUBLIC OFFICIALS — ACTUAL MALICE.

A government employee having or appearing to the public to have substantial responsibility for or control over the conduct of governmental affairs is a public official and as such may not recover damages for statements concerning him unless he can prove that the statement was made with actual malice, i.e., with knowledge that the statement was false or with reckless disregard of whether it was false or not.

4. LIBEL AND SLANDER — MALICE — PLEADING.

A general allegation of malice is insufficient to establish the showing of actual malice required to withstand a motion for summary disposition on the basis of a lack of a genuine issue of material fact; a plaintiff must support his allegations with facts from which the existence of malice might be inferred.

5. LIBEL AND SLANDER — ACTUAL MALICE — RECKLESS DISREGARD FOR TRUTH.

Reckless disregard for whether a statement was false or not, sufficient to show actual malice in its publication, is not measured by whether a reasonably prudent man would have published or would have investigated before publishing, but by whether the publishers, in fact, entertained serious doubts concerning the truth of the statement published.

*Brian K. Kirkham, P.C.* (by *Brian K. Kirkham*), for plaintiff.

*Smith, Haughey, Rice & Roegge* (by *Susan J. Bradley*), for Richard Frantz.

*Chambers, Steiner, Mazur, Ornstein & Amlin, P.C.* (by *Angela J. Nicita*), for Calhoun County AFL-CIO Labor Council.

Before: G. R. McDONALD, P.J., and DOCTOROFF and R. E. ROBINSON,* JJ.

DOCTOROFF, J. Plaintiff appeals as of right from an order entered by the Calhoun Circuit Court summarily dismissing her libel action against the defendants pursuant to MCR 2.116(C)(10). We affirm.

Plaintiff is employed by the City of Battle Creek as a contract compliance officer. She serves at the discretion of the city's executives, the mayor, vice-mayor, manager and commissioners. Her salary is paid by the public.

The plaintiff's responsibilities include monitoring the various construction projects "let" by the city for compliance with affirmative action requirements, minority hiring requirements, local hiring requirements, and prevailing wage standards. Plaintiff also monitors projects funded with local, state and federal moneys. However, she does not have the authority to monitor projects not let by the city. She acts only after she is told to do so by her superiors. Additionally, plaintiff administers the city's program for certification of women- and minority-owned businesses. She also conducts equal opportunity employment reviews for financial assistance on all businesses seeking tax abatements.

The individual defendant, Richard Frantz, serves

* Former circuit judge, sitting on the Court of Appeals by assignment.

as the business manager and financial secretary for the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Local 335, AFL-CIO. Defendant worked closely with plaintiff for a significant period of time, informing her as to which contractors and which projects were violating the local hiring practices and prevailing wage standards. After making an investigation, plaintiff would remedy the discovered violations.

In 1984, Cello-Foil Products, Inc. undertook the expansion of its Battle Creek facilities by building an addition to its plant and installing flex-o-graphic printing presses, two rotogravure printing presses and a solvent recovery system. The city became involved by assisting Cello-Foil in the obtaining of financing for its project. The city both loaned Cello-Foil money from its community block development grant funds and assisted the company in obtaining an urban development action grant (UDAG).

After work had begun on the Cello-Foil expansion project, defendant contacted plaintiff and informed her of numerous complaints he had received concerning the Cello-Foil project. He made inquiries as to whether the labor standards applied to the Cello-Foil project and also requested that plaintiff begin monitoring it for compliance with labor standards.

Following defendant's request, plaintiff began an investigation into whether the city possessed the authority to monitor the Cello-Foil project. She contacted several people and met with many more individuals to determine the extent of her authority. Additionally, she reviewed Department of Housing and Urban Development labor standard compliance regulations, HUD manuals, city ordi-

nances and resolutions, applicable state statutes, and all tax abatement papers. No one she contacted believed that she had the authority to monitor the Cello-Foil project.

Plaintiff also contacted a labor relations specialist for HUD, who informed her that she and the city had no authority to monitor the project. He also told the plaintiff that the officials at HUD were of differing minds as to how labor standards monitoring could be applied to private industry construction projects being conducted with money loaned to the industry from federal funds. Consequently, clarification from Washington, D.C. had been sought. As of the date of plaintiff's contact, no answer had been received. Plaintiff never heard from HUD nor received the results of the contact made with HUD. She did not contact HUD herself.

Defendant believed that plaintiff had the authority to monitor the project. On July 30, 1985, he wrote a letter to her in which he charged her with being derelict in her duties and threatened legal action to force her to monitor the project. A copy of his letter was sent to the mayor, vice-mayor, city manager and city commissioners. When defendant refused to retract the allegation that she was derelict in her duties, plaintiff filed a complaint charging him and defendant Calhoun County AFL-CIO Labor Council with libel.

Following the filing of the suit, defendant Frantz's counsel sought an opinion from the HUD labor standards officer as to whether the city possessed the authority to monitor the Cello-Foil project. When plaintiff received a copy of the letter that HUD sent to defendant's counsel indicating that the city was responsible for monitoring the project for compliance with federal labor standards, the city manager directed her to meet with the labor standards officer for HUD, the city attor-

ney and the executive vice-president of Cello-Foil. At this meeting, the labor standards officer informed the city that it should begin retroactive labor standards monitoring on the installation of the flex-o-grahpic presses. Further, it was decided that once Cello-Foil received the UDAG money, the city would begin monitoring the construction of the solvent recovery system and the installation of the rotogravure presses.

At the close of discovery, Frantz for the second time filed a motion for summary disposition, in which the labor council joined. The court granted summary disposition pursuant to MCR 2.116(C)(10), finding that the plaintiff was a public official and further finding that the plaintiff was unable to show actual malice.

On appeal, plaintiff claims that the trial court erred when it summarily dismissed her libel action. She first contends that the trial court abused its discretion when it found her to be a public official for the purposes of libel law. She further asserts that the trial court erred by concluding that there was no genuine issue of material fact regarding the existence of actual malice.

A motion for summary disposition premised on MCR 2.116(C)(10) requires a trial court to review the entire record to determine whether the nonmoving party has discovered facts to support the claim or defense. Consequently, the trial court must look beyond the pleadings and consider affidavits, depositions, interrogatories, or other documentary evidence filed in the case. MCR 2.116(G)(5). In reviewing this evidentiary record, the trial court must give the benefit of any reasonable doubt to the nonmoving party in deciding whether a genuine issue as to a material fact exists. *Rizzo v Kretschmer*, 389 Mich 363, 371-732; 207 NW2d 316 (1973). Before judgment may be

granted, the trial court must be satisfied that it is impossible for the claim asserted to be supported by evidence at trial. *Huff v Ford Motor Co,* 127 Mich App 287, 293; 338 NW2d 387 (1983).

We turn now to plaintiff's first argument: that the trial court erred by finding her to be a public official about whom the statements made were protected by a qualified privilege. We disagree. The initial determination of whether a privilege exists is one of law for the court. See *Swenson-Davis v Martel,* 135 Mich App 632, 636; 354 NW2d 288 (1984), lv den 419 Mich 946 (1984).

To establish liability for defamation, a plaintiff must prove the existence of the following:

> (a) a false and defamatory statement concerning plaintiff; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation *per quod*). [*Postill v Booth Newspapers, Inc,* 118 Mich App 608, 618; 325 NW2d 511 (1982), lv den 417 Mich 1050 (1983).]

Once the plaintiff has met his burden of establishing the existence of these common-law elements, the defendant brings forth his defense of truth or privilege. The fault which a plaintiff must prove varies with whether the allegedly defamed person is a "public official," a "public figure," or a private person. *Id.*

In *New York Times Co v Sullivan,* 376 US 254; 84 S Ct 710; 11 L Ed 2d 686 (1964), the United States Supreme Court recognized the existence of a qualified privilege extending to a media defendant who publishes a statement concerning a "public official":

> The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice" —that is, with knowledge that it was false or with reckless disregard of whether it was false or not. [376 US 279-280.]

In *VandenToorn v Bonner,* 129 Mich App 198, 208; 342 NW2d 297 (1983), lv den 421 Mich 864 (1985), a panel of this Court extended the scope of this qualified privilege to nonmedia defendants who publishes statements about the conduct of public officials.

In *Rosenblatt v Baer,* 383 US 75; 86 S Ct 669; 15 L Ed 597 (1966), the United States Supreme Court, in defining for the first time the term "public official," stated:

> It is clear, therefore, that the "public official" designation applies at the very least to those among the heirarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs. [383 US 85.]

By way of elaboration on the Court's definition, it continued:

> Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, both elements we identified in New York Times are present and the New York Times malice standards apply. [383 US 86.]

Finally, the Court pointed out, by way of footnote:

> The employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy. [383 US 87, n 13.]

Although several panels of this Court have recognized that a sheriff or a deputy sheriff is a public official within the meaning of the *Rosenblatt* test, we have yet to set forth any discussion of the application of that test. Hence, we take this opportunity to do so.

The facts pertinent to this matter and the details concerning plaintiff's involvement with the City of Battle Creek have previously been set forth. She is paid through use of public funds and her position is not one filled by election. Indeed, she was placed in the position by the finance director of the city, the personnel director of the city, and the former purchasing agent/risk manager of the city respectively. She serves at the discretion of the city's mayor, vice-mayor, manager and commissioners. As indicated, her duties include the monitoring of various construction projects let by the city for compliance with affirmative action requirements, with minority hiring standards, with local hiring requirements and with prevailing wage standards. Plaintiff monitors "anything that has to do with the money that an employee is paid on any project." She also monitors projects funded by local, state and federal moneys. She has, however, no authority to monitor projects not let by the city, nor has she any authority to monitor projects funded through private sources or economic development bonds. She only acts upon receiving orders from her superiors.

Further, plaintiff administers the city's program for certification of women- and minority-owned

businesses. Finally, she conducts equal opportunity employment reviews for financial assistance on all businesses seeking tax abatements.

In view of the above, we are persuaded that the trial court did not err when it concluded that plaintiff is a public official within the meaning of *Rosenblatt.* Although plaintiff has no independent authority to initiate the monitoring of construction projects, she is charged with the responsibility of monitoring those projects, once so directed by her superiors. To effectively do her job and, as a result, to ensure compliance with the variety of federal labor standards, plaintiff must understand and apply a wide variety of local, state and federal rules and regulations. She must collect and collate information in a meaningful manner. Her determinations directly affect the amount of wages local construction workers are paid. Her determinations also have a direct impact on whether a business is certified as a minority business, whether a business gets a tax abatement, and whether local construction workers obtain employment. Consequently, we conclude that plaintiff's position is of such apparent importance that the public has an independent interest in her qualifications and in her performance of her duties beyond the general public interest in the qualifications and performance of all government employees. Therefore, we conclude that the court was correct when it held that plaintiff is a public official within the meaning of *Rosenblatt.*

Defendant's communication in this instance is thus protected by a qualified immunity that may be overcome only by a showing of actual malice. See *Swenson-Davis, supra.* The question now becomes whether a material issue of fact exists as to whether defendant made those statements with actual malice.

A statement made with "actual malice" is one that was made with knowledge that it was false or with reckless disregard of whether it was false or not. *New York Times, supra,* pp 279-280; *Lins v The Evening News Ass'n,* 129 Mich App 419, 429; 342 NW2d 573 (1983). General allegations of malice will not suffice to establish a genuine issue of material fact. Instead, a plaintiff must support his allegations with facts from which the existence of malice might be inferred. *Steadman v Lapensohn,* 408 Mich 50, 55; 288 NW2d 580 (1980); *Goldman v Wayne State University Bd of Governors,* 151 Mich App 289, 293; 390 NW2d 672 (1986). Moreover, a plaintiff should be given ample opportunity to demonstrate actual malice, with the trial courts being reluctant to prevent the issue from going to the jury. *Grostick v Ellsworth,* 158 Mich App 18, 23; 404 NW2d 685 (1987), lv den 429 Mich 861 (1987). Finally, reckless disregard is not measured by whether a reasonably prudent man would have published or would have investigated before publishing, but by whether the publisher, in fact, entertained serious doubts concerning the truth of the statements published. *Kurz v The Evening News Ass'n,* 144 Mich App 205, 213; 375 NW2d 391 (1985).

Plaintiff contends that the trial court granted summary disposition on the ground that there was no issue as to common-law malice by looking at defendant's good faith. Although the trial court stated that no actual malice occurred, it did look at the issue of good faith. Nonetheless, we find that the trial court's ultimate conclusion that no genuine issue of fact existed as to actual malice was correct. Where the trial court reaches the right result for the wrong reason, this Court will not reverse. *Durbin v K-K-M Corp,* 54 Mich App

38, 46; 220 NW2d 110 (1974), lv den 394 Mich 789
;(1975):

The determination to be made is not whether
defendant acted in good faith, but whether he
knew the statements were false or acted with
reckless disregard of whether they were false or
not. In the present case, plaintiff has failed to
demonstrate that a genuine issue of fact exists
regarding whether defendant acted with actual
.malice. Our review of the record that was consid-
..ered by the trial court in deciding defendant's
motion indicates that, notwithstanding plaintiff's
assertions in her affidavit in opposition to defen-
dant's motion, she admitted in her deposition that
she thought defendant believed that the state-
ments he wrote in the letter were true and, fur-
ther, that she had no evidence to establish that he
didn't believe them to be true.

As this Court stated in *Stefan v White,* 76 Mich
App 654, 660; 257 NW2d 206 (1977), citing *Gamet
v Jenks,* 38 Mich App 719, 726; 197 NW2d 160
(1972):

> The purpose of GCR 1963, 117 [now part of MCR
> 2.116] is to allow the trial judge to determine
> whether a factual issue exists. 1 Honigman &
> Hawkins, Michigan Court Rules Annotated (2d ed),
> 1969 Cum Supp, p 51. This purpose is not well
> served by allowing parties to create factual issues
> by merely asserting the contrary in an affidavit
> after giving damaging testimony in a deposition.
> As was stated in *Perma Research and Develop-
> ment Co v The Singer Co,* (CA 2, 1969), 410 F2d
> 572, 578:
>
> "If a party who has been examined at length on
> deposition could raise an issue of fact simply by
> submitting an affidavit contradicting his own prior
> testimony, this would greatly diminish the utility
> of summary judgment as a procedure for screening
> out sham issues of fact."

Here, no explanation was presented regarding the differences between plaintiff's complaint and affidavit and her deposition. See *Stefan, supra; Milligan v The Union Corp,* 87 Mich App 179, 181-182; 274 NW2d 10 (1978).

Accordingly, the trial court properly granted defendant's motion, for no genuine issues of fact existed.

Affirmed.