# STATE OF MICHIGAN

# COURT OF APPEALS

WINDRUSH INC.,

        Plaintiff-Appellant/Cross-Appellee,

v

LEE VANPOPERING, SHAGBARK
DEVELOPMENT INC., and NORTHLAND
MANAGEMENT INC.,

        Defendants-Appellees/Cross-
        Appellants.

UNPUBLISHED
September 10, 2015

No. 315958
Kent Circuit Court
LC No. 09-008274-CK

Before: MURPHY, P.J., and SHAPIRO and RIORDAN, JJ.

PER CURIAM.

## ON REMAND

We previously considered this appeal and cross-appeal and issued an opinion affirming in full the trial court rulings. *Windrush Inc v VanPopering*, unpublished opinion per curiam of the Court of Appeals, issued June 19, 2014 (Docket No. 315958). Plaintiff Windrush, Inc., then filed for leave to appeal to the Supreme Court. In lieu of granting the application, the Supreme Court vacated our opinion and remanded the case to us "for reconsideration in light of *BC Tile & Marble Co, Inc*, 288 Mich App 576[; 794 NW2d 76] (2010)[,]" a case we had failed to consider in our opinion.

*BC Tile* addresses when a corporate officer may be held personally liable for his company's violation of the Michigan Builders' Trust Fund Act (MBTFA), MCL 570.151 *et seq*. After review of that decision, we reverse the trial court's conclusion that VanPopering is not personally liable for the damages arising out of his company's violation of the MBTFA.

We conclude that *BC Tile* does not affect the analysis or outcome of any other issue in this case. Accordingly, the following discussion is drawn verbatim from our initial opinion, except for Section II(B)(3), entitled "PERSONAL LIABILITY OF VANPOPERING," and Section III, entitled "CONCLUSION."

# I. FACTS

This appeal concerns the construction of a condominium development known as the Shagbark Condominiums ("the project"), owned by defendant Shagbark Development ("Shagbark"). Defendant Northland, owned solely by defendant Lee VanPopering, was the general contractor on the project. VanPopering was also the president and part owner of Shagbark. Northland, as the general contractor on the project, entered into agreements with plaintiff Windrush, which performed carpentry work and painting on the project. James Suschil was the president and sole owner of plaintiff.

At some point before the project was fully completed, financial difficulties arose and Fifth Third Bank, the project's principal financier, threatened to foreclose on the project. On December 21, 2006, the project, in various stages of completion, was sold at a distressed price to a company called Mallards Landing. In October 2005, Suschil, and by extension, plaintiff, declared bankruptcy. Jeff Moyer was appointed bankruptcy trustee and, therefore, the sole representative of plaintiff. Seeking money to pay off Suschil's creditors, Moyer began pursuing funds he believed plaintiff was owed for work completed on the project.

On July 31, 2009, plaintiff, through Moyer, brought suit against defendants, asserting three separate theories of liability. Plaintiff alleged that VanPopering, Shagbark, and Northland were jointly and severally liable for (1) breach of contract, (2) violations of the [] MBTFA, and (3) statutory conversion, MCL 600.2919a. Plaintiff requested $29,300 under the contract and MBTFA theories, and $89,700 for statutory conversion ($29,300 x 3), a cause of action that provides a trial court with the discretion to award treble damages. MCL 600.2919a(1); *Aroma Wines & Equip, Inc v Columbia Distrib Servs, Inc*, 303 Mich App 441, 449-450; 844 NW2d 727 (2013). Plaintiff claimed that defendants failed to pay for work completed on "Building 12" and "Building 13" of the project. Per the parties' agreement, plaintiff was to receive $9,000 per building, known as a "builder's fee," after the buildings were completed and sold, for a total of $18,000. Plaintiff also claimed it was entitled to $11,300 under a construction lien placed on the project by Suschil for work performed on "Unit 45."

Plaintiff moved for summary disposition under MCR 2.116(C)(10), which was granted with respect to the breach of contract claim against Shagbark for $29,300, but denied as to all other claims and all other defendants. This ruling is not challenged on appeal.

After a three-day bench trial, the court allowed the parties to submit written closing arguments. Plaintiff claimed that it was now owed an additional $22,500 by Northland and VanPopering due to some "particularly damning admissions by Mr. VanPopering" made on the last day of trial. Plaintiff cited a document, maintained by VanPopering, indicating that VanPopering had "paid" plaintiff $22,500 after December 21, 2006. Plaintiff asserted three separate theories as to how this $22,500 "fit" with the previously claimed $29,300 in damages. Lastly, plaintiff asserted that, even if VanPopering or Northland paid the $22,500 to Suschil, they still owed the money to plaintiff, because it would have been paid after Moyer had assumed control and authority over plaintiff.

In a written opinion, the trial court found: (1) as to breach of contract, for plaintiff against Northland for $9,000 for the Building 13 builder's fee, but for VanPopering against plaintiff; (2)

as to violations of the MBTFA, for plaintiff against Northland for $11,300, but for VanPopering and Shagbark against plaintiff, and; (3) as to statutory conversion, for all defendants. The court's ruling was eventually reduced to a judgment for plaintiff accounting for applicable interest and costs. From this judgment, plaintiff appealed and Northland cross-appealed. [*Windrush*, pp 1-2.]

## II.  BREACH OF CONTRACT

On appeal, plaintiff argues that defendants are liable for the $9,000 builder's fee for Building 12. On cross-appeal, Northland argues that the trial court erred by finding it liable to plaintiff for the builder's fee for Building 13.[1]

"A party claiming a breach of contract must establish by a preponderance of the evidence (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting the breach of contract suffered damages as a result of the breach." *Miller-Davis Co v Ahrens Constr, Inc (On Remand)*, 296 Mich App 56, 71; 817 NW2d 609 (2012), rev'd in part on other grounds, __ Mich __ (Docket No. 145052; April 15, 2014).

The trial court found that it was undisputed that the parties entered into a "profit agreement," i.e., a contract, under which plaintiff would be paid a $9,000 builder's fee for its work on both Buildings 12 and 13 when those buildings were completed and sold. It appears that either a written agreement was not executed or such an agreement was not entered into the record before this Court. However, both VanPopering and Suschil testified that plaintiff was to receive a builder's fee for Buildings 12 and 13 only if those buildings were completed and sold.

The court found, based on VanPopering's testimony, that Building 13 had been completed and sold and that plaintiff had not been paid, thus satisfying the final two elements necessary to establish a breach of contract against Northland, the general contractor. Indeed, VanPopering testified at trial that plaintiff had performed the contracted work on Building 13, that Building 13 had been completed and sold, and that plaintiff was entitled to the builder's fee. Accordingly, the trial court did not err by finding that Northland owed plaintiff $9,000 for its work on Building 13 for breach of contract.

With regard to Building 12, the court found that there was no evidence that Building 12 was ever completed and, therefore, that Northland had not breached the contract by failing to pay plaintiff the $9,000 builder's fee for its work on Building 12. VanPopering testified that

---

[1] We review a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo. A finding is clearly erroneous is there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made. The trial court's findings are given great deference because it is in a better position to examine the facts. [*Chelsea Investment Group LLC v Chelsea*, 288 Mich App 239, 250-251; 792 NW2d 781 (2010) (citations omitted).]

Building 12 was never completed and was sold in incomplete condition.[2] His assertion was bolstered by the fact that Building 12 was sold for far less than the completed buildings. VanPopering testified explicitly that no builder's fees were paid unless a building was completed and sold, i.e., there was no provision for a partial builder's fee if either condition was not met. This testimony is uncontroverted. Given that VanPopering and Suschil both testified that the builder's fee agreement provided that plaintiff would not be paid until Building 12 was completed and sold, combined with VanPopering's uncontroverted testimony that Building 12 was not completed and the principle that unambiguous contract provisions shall be construed as written, see, e.g. *Rory v Continental Ins Co*, 473 Mich 457, 470; 703 NW2d 23 (2005), the trial court did not err by finding that plaintiff was not owed $9,000 for its work on Building 12 for breach of contract.[3] [*Windrush*, pp 2-4 (footnotes in original).]

### III. MBTFA

> The prima facie elements of a civil cause of action brought under the [MBTFA] include (1) the defendant is a contractor or subcontractor engaged in the building construction industry, (2) a person paid the contractor or subcontractor for labor or materials provided on a construction project, (3) the defendant retained or used those funds, or any part of those funds, (4) for any purpose other than to first pay laborers, subcontractors, and materialmen, (5) who were engaged by the defendant to perform labor or furnish material for the

---

[2] At trial, plaintiff pointed out that VanPopering had testified, in his deposition, that Building 12 had been completed. When confronted with this inconsistency, VanPopering explained that he had likely been mistaken and did not have the relevant information before him at that time. The trial court accepted his explanation and found his trial testimony credible. See *Peterfish v Frantz*, 168 Mich App 43, 54-55; 424 NW2d 25 (1988). After a bench trial, we defer to a trial court's determinations on witness credibility and the weight of the evidence. See *Berger v Berger*, 277 Mich App 700, 707; 747 NW2d 336 (2008).

[3] Plaintiff's argument that Northland admitted that plaintiff was owed $9,000 for Building 12 in its pleadings is without merit. "[J]udicial admissions are formal concessions that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of that fact." *King v Mich State Police Dept*, 303 Mich App 162, 183; 841 NW2d 914 (2013) (quotation marks and citation omitted). In its complaint, plaintiff asserted that it was entitled to the builder's fee for Building 12. In their answer, defendants admitted that, "absent certain intervening events," plaintiff would have been entitled to the builder's fee. Plaintiff sent interrogatories, requesting that defendants identify these "intervening events." Defendants responded, describing unrelated litigation and concluding that, "the project was sold at a distressed price." While not specific, this response can reasonably be read to indicate that Building 12 was not completed, and sold at a distressed price. In any event, it does not constitute a specific and "formal" concession that plaintiff was owed the builder's fee for Building 12. See *King*, 303 Mich App at 183. Indeed, plaintiff's argument is belied by the fact that counsel for both parties repeatedly questioned VanPopering at trial as to whether Building 12 was completed. Had defendants truly conceded that plaintiff was owed the builder's fee, no such questioning would have been necessary.

specific project. [*DiPonio Constr Co, Inc v Rosati Masonry Co, Inc*, 246 Mich App 43, 49; 631 NW2d 59 (2001).]

In essence, the MBTFA requires a contractor to pay its laborers, subcontractors, and materialmen prior to keeping the funds received for a project as profit or using the funds for other, unrelated matters. "Because the [MBTFA] . . . is remedial in nature, it should be construed liberally for the advancement of the remedy." *Id*. at 50.

## A.  BUILDINGS 12 & 13

VanPopering testified that Northland was the general contractor on the project and plaintiff was a subcontractor engaged to perform work on the project, satisfying elements (1) and (5). See *id*. While Suschil testified that Shagbark was the general contractor, we defer to the factfinder's determinations on witness credibility and the weight given to the evidence. *Berger*, 277 Mich App at 707. Accordingly, the trial court's finding that Northland was the general contractor was supported by the evidence.

VanPopering also testified that Northland, through Shagbark, received the funds received from the sale of the buildings in the project and that Northland retained those funds, thus satisfying elements (2) and (3). As discussed above, plaintiff was entitled to $9,000 for its work on Building 13. VanPopering testified that Northland never paid plaintiff that $9,000, thus satisfying element (4). The trial court's findings that plaintiff established all five elements of an MBTFA violation with regard to the builder's fee for Building 13 were supported by the evidence and, thus, not clearly erroneous. *Chelsea Investment Group*, 288 Mich App at 250-251. Accordingly, the trial court did not err by ruling that Northland violated the MBTFA by failing to pay plaintiff the $9,000 builder's fee for Building 13.

The above discussion regarding elements (1), (2), (3), and (5) applies equally to Building 12. However, to establish element (4), plaintiff must prove that Northland used the funds it received for the project without first paying plaintiff, one of its subcontractors. It goes without saying that a subcontractor must actually be entitled to payment in order to invoke the MBTFA. As discussed above, the evidence supported the trial court's finding that Building 12 was never completed and that plaintiff and Northland had a contract that did not entitle plaintiff to the $9,000 builder's fee for Building 12 until completion and sale. Because plaintiff was not entitled to the builder's fee, Northland's use of funds received for the project for purposes other than paying that builder's fee was not a violation of the MBTFA. Accordingly, the trial court's ruling that Northland did not violate the MBTFA with regard to Building 12 was not erroneous.

## B.  $11,300 LIEN

The trial court also found Northland liable for an $11,300 construction lien plaintiff placed on "Unit 45" for work completed.

As a preliminary matter, the trial court noted that there was no evidence that plaintiff ever waived the lien or that the lien was ever paid. See *Durant Constr, Inc v Gourley*, 125 Mich App 695, 698-699; 336 NW2d 856 (1983). VanPopering admitted that the lien was valid and related to work performed on the project; indeed, it was VanPopering himself who suggested that plaintiff obtain the lien in light of the increasing financial instability of the project.

As discussed above, plaintiff satisfied elements (1), (2), (3), and (5) of an MBTFA action with regard to its relationship with Northland. VanPopering testified that the $11,300 lien was in regard to work performed and materials provided on the project and that plaintiff was never paid under the lien. Northland, at times, possessed funds with which to pay plaintiff and apparently used those funds for other purposes. Accordingly, plaintiff established all five necessary elements of an MBTFA violation with regard to the $11,300 lien and, therefore, the trial court did not err by so ruling. [*Windrush*, pp 4-5 (footnotes in original).]

## C. PERSONAL LIABILITY OF VANPOPERING

Plaintiff argues that the trial court erred by refusing to hold VanPopering personally liable for the violations of MBTFA.[4] In ruling on this issue, the trial court wrote:

> The record does not support a finding that Windrush served as a subcontractor for Mr. VanPopering in his personal capacity. This case is distinguishable from *People v Brown*, 239 Mich App 735 (2000), which plaintiff cites in its brief and which involves a criminal conviction for fraudulent transfer or use of business funds. In *Brown*, the corporate officer was convicted of unlawfully transferring funds from a business account to her personal account, when subcontractors went unpaid. *Id*. at 738. In contrast, testimony and evidence presented at trial support a finding that Mr. VanPopering loaned the corporation money to keep it afloat and was only partially repaid after the property sale.

The trial court applied the incorrect legal test for resolving this question. While the court did not misstate the holding of *Brown*, a criminal case, it failed to recognize that the standard for personal civil liability under the MBTFA is less exacting, as explained in *BC Tile*.

In that case, the general contractor, Multi Building, whose president was Adriano Paciocco, engaged the plaintiff, BC Tile, to supply and install ceramic tile on a project. *BC Tile*, 288 Mich App at 579. BC Tile sent an invoice for labor and materials in the amount of $33,813 to Multi Building, but did not receive payment. *Id*. BC Tile filed suit alleging that the defendants violated the MBTFA by failing to pay it for labor and materials furnished. *Id*. at 580. The trial court granted summary disposition in favor of Paciocco under MCR 2.116(I)(2), finding that he was not personally liable for the actions of Multi Building because there was no evidence that he personally received or misappropriated the funds. *Id*. at 581. We reversed summary disposition and remanded for trial because Paciocco's signature was on documents indicating that Multi Building received payment for the project, out of which payment to BC Tile should have, but was not, made. *Id*. at 592. We concluded that it was not necessary to show that the Paciocco had personally benefited from that retention of funds and that the fact that a corporate officer does not have day-to-day involvement in the project "does not absolve [him] of individual liability." *Id*. at 589.

---

[4] "Whether the MBTFA encompasses officers of a corporate contractor who personally misappropriates funds is a question of statutory construction. We review questions of statutory construction de novo." *People v Brown*, 239 Mich App 735, 739; 610 NW2d 234 (2000).

VanPopering was the sole owner and president of Northland. A review of the trial court's findings and the record, particularly VanPopering's own testimony, leaves no doubt that he managed all the relevant transactions and accounts. He was responsible for all of Northland's financial decisions and actions. While it may be argued that his decisions were motivated by a desire to preserve the project, *BC Tile* makes clear that it is participation in the decision to act in violation of the MBTFA that controls, not whether there was a subjective intent to defraud or obtain personal financial benefit. Accordingly, VanPopering is personally liable for the damages awarded to plaintiff for Northland's violations of the MBTFA.

## IV. $22,500

Plaintiff claims that it was entitled to funds related to an entry in VanPopering's documents related to the project.

On the final day of trial, a 28-page handwritten document was introduced titled "Lee's loans to Shagbark." On the 25th page was an entry stating: "Windrush, $22,500." VanPopering was repeatedly questioned about the significance of this entry. Given the financial complexity of the situation, coupled with the significant time period that had elapsed, he was unable to confirm what the entry even signified, much less whether any monies had been paid to plaintiff pursuant to the entry. Plaintiff's counsel suggested at trial and now on appeal that the entry represents either funds owed to plaintiff (possibly including parts or all of the other claims in this case) or funds VanPopering paid to Suschil, after Moyer had been declared bankruptcy trustee, and thus still owed to plaintiff.

The trial court found that: "Plaintiff has not established its breach of contract claim with respect to . . . the $22,500 that it claims was paid to Windrush or Mr. Suschil after bankruptcy was filed." The trial court did not clearly err by so ruling. The only evidence regarding the $22,500 entry was VanPopering's testimony, which did not establish to what the entry referred or whether it signified any funds actually paid. Plaintiff points out that $22,500 is a perfect total of two $9,000 builder's fees for four-unit buildings and one $4,500 builder's fee for a two-unit building and that, if VanPopering paid plaintiff the $22,500, he must have done so by improperly paying Suschil after Moyer became the sole representative of plaintiff. These assertions, while conceivably true, remain speculative and, in view of the existing record, cannot establish by a preponderance of the evidence that plaintiff was owed all or part of $22,500 based on VanPopering's entry. See *Miller-Davis Co*, 296 Mich App at 71. Accordingly, the trial court did not err by finding that plaintiff was not entitled to relief on its claim for all or part of $22,500. [*Windrush*, p 7.]

## V. STATUTORY CONVERSION

Lastly, plaintiff argues that the trial court erred by failing to hold VanPopering and Northland liable for statutory conversion, MCL 600.2919a, which provides in relevant part:

(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

-7-

(a) Another person's stealing or embezzling property or converting property to the other person's own use.

The trial court found for defendants, writing:

> [T]he record does not support a cause of action for conversion. "Conversion is defined as 'any distinct act of domain wrongfully exerted over another's property in denial of or inconsistent with the rights therein.'" *Lawsuit Financial LLC v Curry*, 261 Mich App 579, 592-93 (2004) (quoting *Foremost Ins Co v Allstate Ins Co*, 493 Mich 378, 391 (1992)). When the claim is that defendant was under an obligation to return money otherwise retained, the claim is satisfied only by a showing that defendant was under an obligation to return the specific money entrusted to its care. *AFSCME v Bank One*, 267 Mich App 281, 295-96 (2005). Plaintiff has failed to satisfy its burden here. Mr. Suschil's testimony does not support a finding that any money due to Windrush was received or retained without his consent. Second, there is no basis for finding any defendant's [sic] initial possession of money retained from the sale of an individual condominium unit or the closing as a whole was unlawful. To the extent that plaintiff seeks money recovered during the sale of the condominium development, the [bankruptcy] trustee was apparently at this sale and approved it. While Northland or another defendant may have been obligated to pay Windrush, as a subcontractor, after receipt, this would only be from funds generally received and not specific money due. Plaintiff's claim for conversion is without merit.

We first address whether plaintiff may maintain an action for statutory conversion for defendants' alleged violations of the MBTFA. The parties have cited no caselaw that directly addresses this issue. However, plaintiff suggests that our Supreme Court's analysis of an analogous question in *Dep't of Agriculture v Appletree Mktg, LLC*, 485 Mich 1; 779 NW2d 237 (2010), should guide our decision. In that case, the Court considered "whether the remedies provided for a breach of the Agricultural Commodities Marketing Act (ACMA) supersede . . . or abrogate" other remedies, including statutory conversion. *Id*. at 3-10. "Under the ACMA, apple distributors deduct the assessments from payments sent to producers, *hold the funds in trust*, and remit the funds . . . on a periodic basis." *Id*. at 5 (emphasis added). In *Appletree*, the plaintiff alleged that the defendant breached the trust fund provisions of the ACMA and brought claims under the act, as well as claims of statutory and common-law conversion. *Id*. This Court concluded that the ACMA provided its own exclusive remedies and, thus, the statutory conversion claim could not stand. *Id*. at 6.

The Supreme Court reversed. *Id*. at 13. The Court noted that the language of the ACMA did not prohibit cumulative remedies; indeed, the act provided its own claims "[i]n addition to any other remedy provided by law[.]" *Id*. at 8-9; MCL 290.699. The Court further acknowledged that "the specific language in the statutory conversion provision, MCL 600.2919a(2) provides that relief for a claim of statutory conversion 'is in addition to any other right or remedy the person may have at law or otherwise.'" *Id*. at 9. The Court concluded that, "because the Legislature is capable of permitting cumulative remedies, as is the case with the statutory language present here[,]" that "the ACMA and MCL 600.2919a clearly permit cumulative remedies." *Id*. at 13.

Applying the rationale employed by our Supreme Court in *Appletree*, we conclude that plaintiff may maintain both claims cumulatively. Like the ACMA, there is nothing in the MBTFA to suggest that it provides the sole remedy for an MBTFA violation. Indeed, the MBTFA itself "is a penal statute that does not expressly provide a civil cause of action. However, our Supreme Court has long recognized a civil cause of action for violation of the provisions of the act." *DiPonio Constr*, 246 Mich App at 48. Further, like in the ACMA, *Appletree*, 485 Mich at 5, a general contractor subject to the MBTFA holds its funds in trust until its laborers, subcontractors, and materialmen are paid, *DiPonio Constr*, 246 Mich App at 49, quoting *Nat'l Bank of Detroit v Eames & Brown*, 396 Mich 611, 622; 242 NW2d 412 (1976) ("The purpose of the [MBTFA] is to create a trust fund for the benefit of materialmen and others under private construction contracts"); see also *Weathervane Window, Inc v White Lake Constr Co*, 192 Mich App 316, 325; 480 NW2d 337 (1991) ("The contractor holds the money paid for the construction project as a trustee"); *Blair v Trafco Prod, Inc*, 142 Mich App 349, 353-354; 369 NW2d 900 (1985). Accordingly, we conclude that an action for statutory conversion may be maintained for a violation of the MBTFA.

Having found that an action for statutory conversion may proceed, we turn to the application of the elements to this case. Plaintiff was obviously "damaged" by Northland's failure to pay the $9,000 builder's fee for Building 13 and the $11,300 construction lien; as discussed, these failures to pay violated the MBTFA. MCL 600.2919a(1). There is no evidence that Northland "stole" or "embezzled" the money to which plaintiff was entitled. MCL 600.2919a(1)(a). The question remains whether Northland "converted" the money.

"Conversion" is a legal term of art, "defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Lawsuit Financial, LLC v Curry*, 261 Mich App 579, 591; 683 NW2d 233 (2004) (quotation marks and citation omitted). "To support an action for conversion of money, the defendant must have obtained the money without the owner's consent to the creation of a debtor-creditor relationship *and* must have had an obligation to return the specific money entrusted to his care." *Id*. (emphasis added).

Under the MBTFA, Northland was obligated to pay plaintiff $9,000 and $11,300. However, there is no evidence that plaintiff and Suschil did not consent to Northland receiving the payments for the condominiums, holding the funds in trust, and then remitting payment to plaintiff at the appropriate time. Naturally, plaintiff did not consent to Northland failing to ever pay the owed funds; however, Northland *obtained* the funds with plaintiff's consent to the creation of a debtor-creditor relationship, *id*., and, therefore, the trial court did not err by ruling that plaintiff failed to establish statutory or common-law conversion.

III. CONCLUSION

We affirm in total the trial court's rulings concerning breach of contract, statutory conversion, and the $22,500 issue. We also affirm the court's conclusions that Northland violated the MBTFA with regard to Building 13 (for $9,000) and the $11,300 construction lien, but did not violate with regard to Building 12. We reverse the court's ruling that VanPopering was not personally liable for Northland's violations of the MBTFA and remand for entry of an

order imposing personal liability on VanPopering for those violations. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Douglas B. Shapiro
/s/ Michael J. Riordan