BC TILE & MARBLE CO, INC V MULTI BUILDING CO, INC

Docket No. 289258. Submitted April 6, 2010, at Detroit. Decided April 13, 2010. Approved for publication June 8, 2010, at 9:05 a.m.

BC Tile & Marble Co., Inc., brought an action in the Oakland Circuit Court against Multi Building Co., Inc., Maybury Park, L.L.C., and others, including Adriano Paciocco, who was both the president and resident agent of Multi Building and a member and the resident agent of Maybury Park. BC Tile alleged, in part, a violation of the Michigan builders' trust fund act (MBTFA), MCL 570.151 *et seq.*, as a result of defendants' failure to pay BC Tile the amount of its recorded lien for labor and materials it provided for improvements to real property owned by Maybury Park that was sold by Maybury Park to defendants Irfan and Maisa Haddad after the lien was recorded. BC Tile claimed that Paciocco, Multi Building, and Maybury Park received funds from the sale of the property and failed to pay its lien in violation of the MBTFA. A default was entered against Multi Building. Maybury Park, the Haddads, and other defendants, but not Paciocco, were then dismissed from the action. BC Tile moved for partial summary disposition against Paciocco, alleging, in part, that as an officer of Multi Building, he was personally responsible for the amount owed. Paciocco responded that a lesser amount was due because the Haddads had been given a closing credit, allegedly to compensate them for BC Tile's defective work and the delay in the closing caused by attempts to correct the work. Paciocco also argued that to hold a principal of a corporate contractor liable under the MBTFA, there must be evidence that the principal knew about or approved the alleged violation and that there was no such evidence in this case. Paciocco requested that the court deny BC Tile's motion and grant summary disposition in his favor. The court, Shalina D. Kumar, J., denied BC Tile's motion and granted summary disposition in favor of Paciocco, relying in part on an uncontradicted affidavit provided by Paciocco in which he denied making any decisions about what to do with the money received from the sale and stated that he did not misappropriate any funds. The court thereafter denied BC Tile's motion for reconsideration, and BC Tile appealed.

The Court of Appeals *held*:

1. The MBTFA imposes a trust on funds paid to contractors and subcontractors for products and services provided under construction contracts. It is a violation of MCL 570.152 if a contractor or subcontractor, with intent to defraud, retains or uses the proceeds of payments for any other purpose than first paying laborers, subcontractors, and suppliers. BC Tile established a prima facie case under the MBTFA against Multi Building by showing that Multi Building was a contractor in the building construction industry, the Haddads paid Multi Building for labor and materials used to construct the real property they purchased, Multi Building made a profit on the project and used the funds received from the Haddads to pay other expenses but did not pay BC Tile, and Multi Building engaged BC Tile to supply and install materials in the property sold to the Haddads.

2. The evidence created a question of fact regarding the extent to which Paciocco was involved in causing Multi Building to act in violation of the MBTFA. Officers of a corporation may be held individually liable when they personally cause their corporation to act unlawfully, even when those officers are not involved in the day-to-day operations of the corporation. The MBTFA indicates that intent to defraud is shown simply by the contractor's appropriation of any moneys paid to the contractor for building operations before the contractor pays all moneys due or to become due to laborers, subcontractors, suppliers, or others entitled to payment. A reasonable inference of appropriation arises under the MBTFA from the payment of construction funds to a contractor and the contractor's subsequent failure to pay laborers, subcontractors, suppliers, or others entitled to payment. The denial of BC Tile's summary disposition motion must be affirmed.

3. Paciocco's mere denials without documentation were not enough to overcome the presumption of appropriation and did not entitle him to a judgment as a matter of law. The trial court erred by granting summary disposition in favor of Paciocco.

Affirmed in part, reversed in part, and remanded.

1. Trusts — Builders' Trust Fund Act — Violations — Prima Facie Case.

A plaintiff must show the following elements to establish a prima facie case of a violation of the builders' trust fund act: (1) that the defendant was a contractor or subcontractor engaged in the building construction industry, (2) that the defendant was paid for labor or materials provided on a construction project, (3) that the

defendant retained or used those funds, or any part of those funds, (4) that the funds were retained for any purpose other than to first pay laborers, subcontractors, and suppliers, and (5) that the laborers, subcontractors, and suppliers were engaged by the defendant to perform labor or furnish material for the specific construction project (MCL 570.151 *et seq.*).

2. CORPORATIONS — LIABILITY OF OFFICERS.

An officer of a corporation may be held individually liable when the officer personally causes the corporation to act unlawfully, regardless of whether the officer was acting on his or her own behalf or on behalf of the corporation.

3. TRUSTS — BUILDERS' TRUST FUND ACT — INTENT TO DEFRAUD — APPROPRIATION OF FUNDS.

An intent to defraud is shown for purposes of the builders' trust fund act simply by a contractor's appropriation of any moneys paid to the contractor for building operations before the contractor pays all moneys due or to become due to laborers, subcontractors, suppliers, or others entitled to payment; a reasonable inference of appropriation arises from the payment of construction funds to a contractor and the contractor's subsequent failure to pay laborers, subcontractors, suppliers, or others entitled to payment (MCL 570.153).

4. MOTIONS AND ORDERS — SUMMARY DISPOSITION.

A nonmoving party may not rely on mere allegations or denials in pleadings in response to a motion for summary disposition when the burden of proof at trial on a dispositive issue rests on the nonmoving party, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists with regard to the issue.

*Abramson Law Offices, PLLC* (by *Jay A. Abramson*), for BC Tile & Marble Co., Inc.

*Jaffe, Raitt, Heuer & Weiss, PC* (by *Peter M. Alter* and *James W. Rose*), for Adriano Paciocco.

Before: WHITBECK, P.J., and METER and FORT HOOD, JJ.

PER CURIAM. In this action brought pursuant to the Michigan builders' trust fund act (MBTFA),[1] plaintiff, BC Tile & Marble Co., Inc., appeals as of right the trial court's denial of its motion for summary disposition and the trial court's order granting summary disposition to defendant Adriano Paciocco. We affirm in part and reverse in part.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff BC Tile supplies and installs tile and marble materials in construction projects. Defendant Paciocco is the president and resident agent of defendant Multi Building Co., Inc. Paciocco is also a member and resident agent of defendant Maybury Park, L.L.C.

In 2006, BC Tile provided labor and materials and made improvements to the property located at 20838 Maybury Park Drive (Unit 5) in Novi, Michigan, which at the time was owned by Maybury Park. In January 2006, BC Tile sent an invoice to Multi Building for its labor and materials in the amount of $33,813, but the invoice was not paid. Consequently, in November 2006, BC Tile recorded a lien in the amount of $33,813 on Unit 5, delivering a copy of the lien and a notice of furnishing to defendant Metropolitan Title Company on November 9, 2006. On November 13, 2006, Maybury sold Unit 5 to defendants Irfan and Maisa Haddad for $946,366.72. Paciocco, Multi Building, and Maybury received funds from the sale of Unit 5.

In September 2007, BC Tile filed a complaint against Multi Building, Maybury, Paciocco, the Haddads, Walmar, Inc., D. West Construction, Inc., and Washington Mutual Bank. BC Tile alleged claims for account stated, breach of contract, breach of implied contract, quantum

---

[1] MCL 570.151 et seq.

meruit and unjust enrichment, promissory estoppel, violation of the MBTFA, and conversion. The crux of BC Tile's claims was that defendants owed BC Tile money for the labor, materials, and improvements that it made to Unit 5. Subsequently, a default was entered against Multi Building, and Maybury, the Haddads, Walmar, D. West Construction, and Washington Mutual Bank were all dismissed from the action.

BC Tile moved for partial summary disposition against Paciocco, pursuant to MCR 2.116(C)(9) and (10), arguing that there was no genuine issue of material fact that Paciocco had violated the MBTFA when he failed to pay BC Tile the $33,813 owed even after Unit 5 was sold to the Haddads. BC Tile argued that, as an officer of Multi Building, Paciocco was personally liable for the amount owed. BC Tile contended that, under the MBTFA, a contractor was required to pay laborers and suppliers before making any other payments, but Multi Building violated this requirement by instead first paying for other costs and expenses.

Paciocco responded to BC Tile's partial motion for summary disposition, contending that BC Tile's work was defective and that attempts to have it corrected had delayed the closing on Unit 5. According to Paciocco, the Haddads received a closing credit of approximately $22,000, largely to account for BC Tile's defective workmanship. Paciocco asserted that Multi Building incurred damages totaling not less than $47,000 as a result of BC Tile's defective workmanship. Paciocco further contended that the true balance due was only $10,000, not $33,813. Therefore, Paciocco argued that BC Tile's argument under MCR 2.116(C)(9) (failure to state a valid defense) was without merit. Paciocco also argued that to hold a principal of a corporate contractor liable under the MBTFA, there must be evidence that

the principal knew about or approved the alleged violation; however, there was no such evidence in this case. Accordingly, Paciocco requested that the trial court deny BC Tile's motion and instead grant Paciocco summary disposition under MCR 2.116(I)(2).

After hearing oral arguments on the motion, the trial court ruled:

> As it pertains to your—to [BC Tile's] summary disposition Motion, there's certainly a question of fact established on whether [BC Tile] is entitled to the money based upon the allegations that there is delay and bad work, defective work. However, I'm also going to respond to Paciocco's Motion pursuant to the Court Rules. And when Paciocco provides me an affidavit saying he didn't make any decisions about what to do with the money received, didn't misappropriate the funds, that it was his partner who made all the decisions, and I'm not given any evidence to contradict that, I'm going—based on that, I'm going to grant Paciocco's summary disposition Motion.

Accordingly, the trial court entered an order denying BC Tile's motion for summary disposition and granting summary disposition in favor of Paciocco, pursuant to MCR 2.116(I)(2).

BC Tile then moved for reconsideration of the order granting summary disposition in favor of Paciocco. BC Tile argued that the trial court committed palpable error by ruling that BC Tile had failed to provide evidence rebutting Paciocco's affidavit, which was not required by law, and by accepting Paciocco's argument that he did not personally violate the MBTFA. The trial court responded in a written opinion and order, relying on this Court's decision in *James Lumber Co, Inc v J & S Constr, Inc*,[2] that a corporate principal "could not be

---

[2] *James Lumber Co, Inc v J & S Constr, Inc*, 107 Mich App 793, 795; 309 NW2d 925 (1981) (citation omitted).

held personally liable under MCL 570.151 *et seq.*, without proof of knowledge or approval of the misuse of the money received by the construction company." Accordingly, the trial court denied BC Tile's motion for reconsideration. BC Tile now appeals.

## II. BC TILE'S MOTION FOR SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

BC Tile argues on appeal that the trial court erred by denying its motion for summary disposition because it presented sufficient evidence to establish a prima facie case of a violation of the MBTFA.

A summary disposition motion under MCR 2.116(C)(9) tests the sufficiency of a defendant's pleadings by accepting all well-pleaded allegations as true. Summary disposition is proper if the defenses are so clearly untenable as a matter of law that no factual development could possibly support a plaintiff's right to recovery.[3] " '[A] motion for summary disposition under MCR 2.116(C)(9) is tested solely by reference to the parties' pleadings.' "[4] In this case, however, the trial court considered Paciocco's affidavit and other documentary evidence presented by the parties. "Where the parties rely on documentary evidence, appellate courts proceed under the standards of review applicable to a motion made under MCR 2.116(C)(10)."[5]

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the com-

---

[3] *Allstate Ins Co v JJM*, 254 Mich App 418, 421 n 2; 657 NW2d 181 (2002).

[4] *Glass v Goeckel*, 473 Mich 667, 677; 703 NW2d 58 (2005) (citation omitted).

[5] *Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 55; 744 NW2d 174 (2007).

plaint.[6] This Court reviews "a motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party."[7] Moreover, the Court considers only "what was properly presented to the trial court before its decision on the motion."[8] Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law."[9] "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party."[10]

This Court reviews de novo a trial court's decision on a motion for summary disposition.[11]

### B. ANALYSIS

BC Tile brought this suit under the MBTFA, which "imposes a trust on funds paid to contractors and subcontractors for products and services provided under construction contracts."[12] Because the MBTFA is a remedial statute, designed to protect people of the state from fraud in the construction industry, it should be construed liberally for the advancement of the remedy.[13]

---

[6] *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004).

[7] *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).

[8] *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003).

[9] *Latham*, 480 Mich at 111.

[10] *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

[11] *Id.* at 424.

[12] *Livonia Bldg Materials Co v Harrison Constr Co*, 276 Mich App 514, 518; 742 NW2d 140 (2007).

[13] *People v Brown*, 239 Mich App 735, 740; 610 NW2d 234 (2000).

The MBTFA is a penal statute, but the Michigan Supreme Court has recognized that a civil cause of action may be brought for its violation.[14]

MCL 570.151 provides:

> In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

MCL 570.152 provides:

> Any contractor or subcontractor engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part therefor [sic], of any payment made to him, *for any other purpose than to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of a felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid,* and may be prosecuted upon the complaint of any persons so defrauded, and, upon conviction, shall be punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment in a state prison at the discretion of the court.[15]

And MCL 570.153 provides:

> *The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the*

---

[14] *Livonia Bldg*, 276 Mich App at 519; *DiPonio Constr Co, Inc v Rosati Masonry Co, Inc,* 246 Mich App 43, 48; 631 NW2d 59 (2001), citing *B F Farnell Co v Monahan,* 377 Mich 552, 555; 141 NW2d 58 (1966).

[15] Emphasis added.

*payment by him of all moneys due* or so to become due laborers, subcontractors, materialmen or others entitled to payment, *shall be evidence of intent to defraud.*[16]

Interpreting these statutory provisions, this Court has stated that a plaintiff must show the following elements to establish a prima facie case under the MBTFA:

> (1) that the defendant is a contractor or subcontractor engaged in the building construction industry, (2) that the defendant was paid for labor or materials provided on a construction project, (3) that the defendant retained or used those funds, or any part of those funds, (4) that the funds were retained for any purpose other than to first pay laborers, subcontractors, and materialmen, and (5) that the laborers, subcontractors and materialmen were engaged by the defendant to perform labor or furnish material for the specific construction project.[17]

Here, regarding the elements necessary to establish a prima facie case for an MBTFA violation, the evidence shows the following: (1) Multi Building, of which Paciocco was the president, was a contractor in the building construction industry, (2) the Haddads paid Multi Building for labor and materials used to construct Unit 5, (3) Multi Building made a profit on the project and used the funds received from the Haddads (4) to pay other expenses, but did not pay BC Tile, and (5) Multi Building engaged BC Tile to supply and install ceramic tile in Unit 5. Thus, we conclude that BC Tile has made out a prima facie case against Multi Building. However, the salient question is whether those allegations extend to Paciocco.

BC Tile asserts that Paciocco was personally liable for all of the violations of the MBTFA. BC Tile points to

---

[16] Emphasis added.

[17] *Livonia Bldg*, 276 Mich App at 519 (citations omitted).

evidence that Paciocco signed the closing documents that allowed the payment of liens to other contractors and that showed that Multi Building received funds from the sale. BC Tile contends that once it established that Multi Building received proceeds from the Haddads yet failed to pay BC Tile and that, at all relevant times, Paciocco was president of Multi Building and a participant in decision-making, a presumption arose under MCL 570.153 that both Multi Building and Paciocco misappropriated funds and violated the MBTFA.

"Officers of a corporation may be held individually liable when they personally cause their corporation to act unlawfully."[18] In fact:

> [A] corporate employee or official is personally liable for all tortious or criminal acts in which he participates, regardless of whether he was acting on his own behalf or on behalf of the corporation. If a defendant personally misappropriates funds after they are received by the corporation, he or she can be held personally responsible under the MBTFA.[19]

In *People v Brown*, the defendant corporate officer argued that because her company was the actual "contractor" for the project in question and "she did not actively participate in the day-to-day operations" of the company, she could not be held criminally responsible under the MBTFA.[20] This Court disagreed, explaining that there was evidence that the defendant withdrew the homeowner's funds from the company's account before subcontractors had been paid and, accordingly, "there was sufficient evidence presented that defendant personally caused the misappropriation of construction

---

[18] *Id.*, citing *Brown*, 239 Mich App at 739-740.

[19] *Livonia Bldg*, 276 Mich App at 519 (citations and quotation marks omitted).

[20] *Brown*, 239 Mich App at 742.

funds under the MBTFA, and she therefore could be prosecuted under the statute even though she technically was not the 'contractor' for the . . . project."[21] The *Brown* defendant also argued that "she could not have violated the MBTFA because she did not personally receive [the purchaser's] payments . . . ."[22] This Court again disagreed, holding that

> there is no requirement that contract payments be made directly to the officer of a corporate contractor in order to hold the officer individually responsible under the MBTFA. Indeed, as long as defendant personally misappropriated the funds after they had been received by the corporation, she could be held responsible under the MBTFA.[23]

There is no evidence here that Paciocco personally used the funds owed to BC Tile as did the defendant in *Brown*. However, as demonstrated in *Livonia Bldg Materials Co v Harrison Constr Co*, such proof is not necessary to find an officer liable for an MBTFA violation. In *Livonia Bldg*, the defendant contractor received funds for a project but did not pay the plaintiff in full.[24] The corporate officers gave testimony regarding their decision to put the funds received in various accounts and, subsequently, their actions in writing checks to entities other than the plaintiff.[25] This Court concluded that the individual corporate officers "acted in direct contravention of the MBTFA . . . ."[26] According to this Court, there was sufficient evidence to create a presumption of misappropriation and to find the corporate

---

[21] *Id.* at 743.

[22] *Id.*

[23] *Id.* at 743-744.

[24] *Livonia Bldg*, 276 Mich App at 521.

[25] *Id.* at 522.

[26] *Id.* at 516.

officers individually liable.[27] This Court explained that the plain language of the MBTFA indicates that "intent to defraud is evidenced simply by '[t]he appropriation by a contractor . . . of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment.' "[28] Moreover, " 'a reasonable inference of appropriation arises from the payment of construction funds to a contractor and the subsequent failure of the contractor to pay laborers, subcontractors, materialmen, or others entitled to payment.' "[29]

Multi Building received payment from the Haddads for the Unit 5 project, but BC Tile was not paid. Paciocco stated that the Haddads were not happy with the tile work done by BC Tile, among other things, and Multi Building therefore agreed to give them a closing credit of $23,300. He claimed that at least $15,000[30] of this credit was attributable to the defective tile work. Paciocco also stated that $32,000 in interest and carrying costs were attributable to a five-month delay on the

[27] *Id.*

[28] *Id.* at 520, quoting MCL 570.153.

[29] *Livonia Bldg*, 276 Mich App at 520, quoting *People v Whipple*, 202 Mich App 428, 435; 509 NW2d 837 (1993).

[30] Although the seller's settlement statement showed a credit of $23,300, Paciocco offered no supporting documentation to substantiate his claim that BC Tile was responsible for $15,000 worth of this credit. BC Tile, on the other hand, attached to its brief on appeal an addendum to the purchase agreement that showed a $14,000 credit "as compensation for the purchaser[s'] accepting the ceramic tile as is, accepting the sliding door installed in the nook as is and for the builder not being required to install the burm . . . ." Thus, this $14,000 credit was not entirely attributable to BC Tile. However, this document was not submitted to the trial court below. This Court considers only "what was properly presented to the trial court before its decision on the motion." *Peña*, 255 Mich App at 310.

part of BC Tile. As a result, Paciocco stated, "I have believed and continue to believe that Multi [Building] does not owe [BC Tile] *any* money for the labor and/or materials that it provided, let alone $33,813 . . . ." It should be noted that BC Tile submitted an affidavit executed by the Haddads stating that they approved BC Tile's work and that the credit they received "was not related to [BC Tile's] labor and materials, and minor problems were remedied." This suggests a question of fact regarding the extent to which the tile work was defective and the amount of money to which BC Tile was entitled.

Although Paciocco denies that he had day-to-day involvement with or exercised decision-making for the Unit 5 project, he does admit that he dealt personally with the Haddads when they allegedly complained about the tile work. Paciocco concludes that he "did not personally receive, misapply, misappropriate, and/or engage in any misappropriation of any construction funds from or relating to the subject property or know about and/or approve of any violation of the [MBTFA]." Several of these latter statements are conclusions of law, and further, pursuant to *Brown*, not having "day-to-day" involvement in a project does not absolve a corporate officer of individual liability.[31] The fact remains that Paciocco's signature is on the seller's settlement statement, which provided for the payment of liens to contractors other than BC Tile and indicated that Multi Building received $33,419.17 from the sale. We conclude that this evidence creates at least a question of fact regarding the extent to which Paciocco was involved in causing Multi Building to act in violation of the MBTFA.

---

[31] *Brown*, 239 Mich App at 743.

### III. PACIOCCO'S MOTION FOR SUMMARY DISPOSITION

#### A. STANDARD OF REVIEW

BC Tile argues that the trial court erred by granting summary disposition to Paciocco. Although BC Tile brought a motion for summary disposition pursuant to MCR 2.116(C)(9) and (10), the trial court granted summary disposition in favor of Paciocco pursuant to MCR 2.116(I)(2). "This Court's review of a trial court's decision to deny or grant summary disposition is de novo."[32] "The trial court appropriately grants summary disposition to the opposing party under MCR 2.116(I)(2) when it appears to the court that the opposing party, rather than the moving party, is entitled to judgment as a matter of law."[33]

#### B. ANALYSIS

BC Tile argues that the trial court erred by granting summary disposition to Paciocco on the basis of its conclusion that BC Tile had the burden of proof and its erroneous reliance on Paciocco's affidavit as credible and conclusive when BC Tile presented contradictory evidence. We agree that summary disposition in Paciocco's favor was improper.

First, *James Lumber*[34] is not binding authority.[35] And, as discussed earlier, the plain language of MCL 570.153 "indicates that *intent to defraud is evidenced simply by '[t]he appropriation by a contractor . . . of any moneys paid to him for building operations before the*

---

[32] *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 657; 651 NW2d 458 (2002).

[33] *Id*. at 658.

[34] *James Lumber*, 107 Mich App 793.

[35] *Livonia Bldg*, 276 Mich App at 520, citing MCR 7.215(J)(1).

*payment by him of all moneys due* or so to become due laborers, subcontractors, materialmen or others entitled to payment.' "[36] Moreover, " 'a reasonable inference of appropriation arises from the payment of construction funds to a contractor and the subsequent failure of the contractor to pay laborers, subcontractors, materialmen, or others entitled to payment.' "[37]

Although Paciocco argues that the quoted passage from *Livonia Bldg* proves only that there would be a presumption of appropriation against Multi Building, it is clear that *Livonia Bldg* addressed the personal liability of corporate officers. This Court explained: "[T]he appropriation of any monies paid to a contractor for building operations before payment of the protected parties—here, the materialman—is evidence of intent to defraud. Accordingly, evidence was presented from which the jury could reasonably have concluded that [the corporate officers] violated the MBTFA . . . ."[38] Thus, as previously stated, the simple fact that a corporate officer wrote checks to make payments to entities other than the contractor to whom money was owed under the MBTFA was enough to establish a presumption of appropriation, and further to find the officer personally liable.

Paciocco's denials, relied on by the trial court, simply stated that he did not have "day-to-day involvement in matters or decision-making relating to the subject property." Paciocco did, however, admit that he dealt with the Haddads when they allegedly complained about the tile work, and BC Tile presented evidence that Paciocco

---

[36] *Livonia Bldg*, 276 Mich App at 520, quoting MCL 570.153 (emphasis added).

[37] *Livonia Bldg*, 276 Mich App at 520, quoting *Whipple*, 202 Mich App at 435.

[38] *Livonia Bldg*, 276 Mich App at 522 (citation omitted).

signed the seller's settlement statement at the closing, which provided that liens to other contractors be paid and further, along with the profit-and-loss statement, indicated that Multi Building received funds from the sale. Nevertheless, Paciocco further stated that he "did not personally receive, misapply, misappropriate, and/or engage in any misappropriation of any construction funds from or relating to the subject property or know about and/or approve of any violation of the [MBTFA]."

Even if Paciocco's statements can be construed as a denial of responsibility for writing checks after the proceeds of the Unit 5 sale had been deposited, if "the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists."[39] Paciocco's mere denials without documentation were not enough to overcome the presumption of appropriation and, likewise, did not entitle him to judgment as a matter of law. Therefore, we conclude that the trial court erred by granting summary disposition to Paciocco.

We affirm the trial court's order denying BC Tile's motion for summary disposition, reverse the trial court's grant of summary disposition to Paciocco, and remand for further proceedings in accordance with this opinion. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full. We do not retain jurisdiction.

---

[39] *Karbel v Comerica Bank*, 247 Mich App 90, 97; 635 NW2d 69 (2001) (citation, emphasis, and quotation marks omitted).