# STATE OF MICHIGAN

# COURT OF APPEALS

ROSEMARY COOPER,

        Plaintiff-Appellee,

v

CIVIC CENTER WILLOW TREE, LLC,

        Defendant-Appellant.

UNPUBLISHED
December 22, 2016

No. 328875
Oakland Circuit Court
LC No. 2014-142951-NO

Before: SERVITTO, P.J., and STEPHENS and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the order granting in part summary disposition in favor of defendant, and denying in part summary disposition in favor of plaintiff in this slip and fall action. We reverse and remand.

## I. BACKGROUND

Plaintiff was a longtime resident of defendant's apartment complex. According to plaintiff, on the morning of March 12, 2014, at about 9:00 a.m., she exited the apartment complex with a trash bag in her right hand and a purse over her right shoulder. Plaintiff was headed to her vehicle carport and then the dumpster. She was aware of the snowy weather conditions prior to leaving her apartment. She wore winter boots and walked slowly. Plaintiff estimated that three to four inches of snow was on the ground. It was a sunny day. There was no sidewalk leading to her carport so plaintiff had to walk directly across the parking lot to reach her vehicle. Plaintiff saw Calvin Pharr, defendant's maintenance person, in the parking lot. Plaintiff walked to her vehicle where she deposited her purse and began to walk to the dumpster to deposit the trash bag when she slipped and fell, landing on her left arm and wrist. Plaintiff estimated that she was more than half way to the dumpster when she fell. Plaintiff did not initially see ice on the ground where she slipped but noticed it thereafter when she slipped again while trying to get up. She saw "chunks" of "dirty ice" on the ground. Pharr and neighbor Darrell Horton picked plaintiff up. Horton drove plaintiff to a hospital. Plaintiff suffered four

---

[1] *Cooper v Civic Center Willow Tree, LLC*, unpublished order of the Court of Appeals, entered October 16, 2015 (Docket No. 328875).

broken bones in her left wrist. She required surgery for the insertion and removal of pins. Plaintiff complained that the parking lot was not plowed and that Pharr did not usually begin to take care of the snow until three to four hours after it was done falling.

Pharr had been employed as defendant's maintenance person for 25 years. He was responsible for ice and snow removal in the parking lot. His rule of thumb for when to plow was when there was enough snow on the ground for the blade on the front of his plow truck to move. He always salted after he plowed. On the day of plaintiff's fall, Pharr plowed and salted the sidewalk area directly outside the complex doors first, leaving buckets of additional salt outside the doors. Pharr was plowing the lot, but had not yet finished when plaintiff exited the complex. There was a heavy storm that day. According to Pharr, there were white-out conditions and snow was continuously falling. Pharr estimated that eight to ten inches fell that day. Pharr began to plow that morning at 7:00 a.m. He wanted the parking lot clear enough for people to be able to access their vehicles and leave the parking lot. He saw plaintiff exit between 8:30 a.m. and 9:00 a.m. with her purse and a trash bag. Plaintiff stopped at the curb, took a step down, walked past Pharr while making a comment about the weather, and then slipped. According to Pharr, plaintiff was only five to seven feet away from him when she fell and had not reached her vehicle yet. Horton exited his vehicle to assist Pharr in picking plaintiff up where after plaintiff went to the hospital. Pharr did not see any ice where plaintiff fell, but also did not move the snow around to inspect. Pharr saw other tenants in the parking lot that day. No one else slipped and fell. The parking lot was L-shaped, with the dumpster being located in the elbow of the L. The parking lot contained a drain. According to Pharr, plaintiff fell on the high end of the drain and not in a low area where water would have pooled and iced over.

On September 16, 2014, plaintiff filed a two-count complaint alleging defendant breached its common law premises liability duties to keep the parking lot in a safe condition, as well as its statutory duties to keep the parking lot in good repair and fit for its intended use pursuant to MCL 554.139(a)(1). Defendant moved for summary disposition on both counts pursuant to MCR 2.116(C)(8) and (C)(10), arguing that the snow and ice accumulation was an open and obvious condition and that the parking lot was fit for its intended use. The trial court granted in part defendant's motion as to plaintiff's common law claims, finding that the snow and ice was an open and obvious condition of the parking lot. However, it denied in part defendant's motion as it related to plaintiff's statutory claims pursuant to MCL 554.139(1)(a), finding that a question of fact existed as to whether defendant violated its statutory duty to maintain the parking lot in a condition fit for its intended use.

## II. STANDARD OF REVIEW

A trial court's grant or denial of a motion for summary disposition is reviewed de novo. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). A motion for summary disposition brought pursuant to MCR 2.116(C)(10) should be granted "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law[ ]" after a review of all "the pleadings, admissions, and other evidence submitted by the parties[,] [viewed] in the light most favorable to the nonmoving party." *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 582-583; 794 NW2d 76 (2010). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Id*.

## III. ANALYSIS

Defendant argues the trial court erred in denying in part its (C)(10) motion for summary disposition regarding plaintiff's statutory claim under MCL 554.139(1)(a). We agree.

Under MCL 554.139(1)(a), lessors have a duty to keep the "premises and all common areas [   ] fit for the use intended by the parties." In *Allison v AEW Capital Management, LLP*, our Supreme Court held that "a parking lot within a leased residential property fits within the meaning of 'common area' because it is accessed by two or more, or all, of the tenants and the lessor retains general control." *Allison*, 481 Mich 419, 428; 751 NW2d 8 (2008). The duty under MCL 554.139(1)(a) "arises from the existence of a residential lease and consequently becomes a statutorily mandated term of such lease." *Id*. at 425. The provisions of MCL 554.139 are to be liberally construed. MCL 554.139(3).

In *Allison*, the Court found the intended use of the defendant's parking lot was for the storing of vehicles. *Id*. at 429. There, the plaintiff fell and broke his ankle in the parking lot of the defendant's apartment complex due to having slipped on one to two inches of accumulated snow. 481 Mich at 423. After falling, the plaintiff noticed "ice on the ground where the snow had been displaced." *Id*. The Court held that the lessor's duty was "to keep [the] parking lot adapted or suited for the parking of vehicles. A parking lot is generally considered suitable for the parking of vehicles as long as the tenants are able to park their vehicles in the lot and have reasonable access to their vehicles." 481 Mich at 429. A lessor's duty under MCL 554.139(1)(a) is fulfilled when tenants are able to park and have reasonable access to their vehicles. *Id*. The obligation "would commonly be to ensure that the entrance to, and the exit from, the lot is clear, that vehicles can access parking spaces, and that tenants have reasonable access to their parked vehicles." *Id*. The Court "recognize[d] that tenants must walk across a parking lot in order to access their vehicles." *Id*. at 430. It also acknowledged that in some cases, exigent circumstances may render a parking area unfit for its intended use. *Id*.

Defendant does not deny that it had a statutory duty to maintain the parking lot in a condition fit for its intended use. Rather, it argues that *Allison* is dispositive of whether it breached that duty and that the trial court misapplied the holdings in *Allison*. Defendant argues that, similar to *Allison*, the intended use of defendant's parking lot is for the parking of cars. Defendant asserts that under *Allison*, its duty to maintain the parking lot in a condition fit for its intended use is fulfilled if the lot is in such a condition as to provide tenants with reasonable access to their vehicles and in and out of the parking lot. Defendant contends that its parking lot was fit for its intended use because plaintiff was able to access her vehicle without incident and other people traversed the parking lot without incident. Defendant reasons that plaintiff could have avoided the area in between her vehicle and the dumpster where she fell by using the sidewalk or waiting to throw out her trash, and that walking was not the intended primary use of the parking lot; rather, it was secondary.

Plaintiff counters that her case is factually dissimilar to *Allison*. She contends that there was a greater accumulation of snow involved here than in *Allison* and that her case is not only about access to vehicles, but also access to the dumpster. She explains that the parking lot here had multiple intended uses, including walking to the dumpster. Plaintiff asserts that the

dumpster was a common area for which defendant had a statutory duty to maintain in a fit condition. Plaintiff insists that snow covered ice is not fit for walking.

We find this case to be factually distinguishable from *Allison* because plaintiff fell on her way to defendant's dumpster located in defendant's parking lot and not on the way to her vehicle. While factually dissimilar, *Allison* provides this Court with an analytical starting point when faced with the factual scenario of a slip and fall on snow and ice in a residential parking lot. To begin, we disagree with defendant that *Allison* held that a parking lot's only or primary purpose is for the parking of vehicles. To the contrary, our Supreme Court held that "the intended use of a parking lot *includes* the parking of vehicles." *Id.* at 429 (emphasis added). The holding was not exclusive. The intended use of the parking lot in this case was to provide "reasonable access" to the complex's dumpster. *Hadden v McDermitt Apartments, LLC*, 287 Mich App 124, 130; 782 NW2d 800 (2010). Applying the Supreme Court's interpretation of a common area in *Allison*, we find that the dumpster was an area over which defendant retained control and which was shared by all tenants. *Allison*, 481 Mich at 427. Tenants should have been able to approach and access the dumpster in defendant's parking lot in order for there to be a finding that the parking lot was fit for its intended purpose. Plaintiff argues the area of the parking lot near the dumpster was unfit because there was a three to four inch accumulation of snow covered with ice and because she fell. When deposed, plaintiff testified that the lot appeared as if it had not been plowed at all. This testimony was in harmony with Pharr's deposition where he explained that he had already plowed once that morning, having begun at about 7:00 a.m. and would have to plow again because of the continuous snowfall. Plaintiff also testified that Pharr generally did not plow until two to three hours after a snowfall's end. Pharr, while not fully conceding that point, explained that with a snowfall like the one on the day of plaintiff's fall, he would not be able to wait because there would be too much snow and that an early start was required.

It is clear from the record that defendant, through its employee Pharr, took reasonable steps and measures to maintain the parking lot in a condition fit for its tenants to be able to access the parking lot and dumpster. We find this to be true even in the case of there being three to four inches of accumulated snow. Pharr began plowing and salting the complex sidewalks and parking lot about two hours before plaintiff exited the building. Plaintiff agreed that Pharr was already in the lot when she came out. Pharr testified that he would salt and plow multiple times that day. Plaintiff has not shown how defendant breached its statutory duty under these circumstances. Reasonable minds could agree that defendant addressed the accumulation of ice and snow near the dumpster and did not leave the area in a condition unfit for its intended use. We cannot gather and plaintiff does not say what more defendant could have done given the weather conditions that day.

We conclude that defendant maintained its parking lot in such fashion that it was fit for providing tenants access to defendant's dumpster. Plaintiff has failed to present evidence to create a genuine issue of material fact regarding the parking lot's fitness, or evidence depicting any exigent circumstances that would call into question a breach of statutory duty under MCL 554.139. Finding no genuine issue of any material fact, we conclude that the trial court erred by denying summary disposition to defendant as to plaintiff's statutory claims pursuant to MCR 2.116(C)(10).

Reversed and remanded to the trial court for entry of an order granting defendant summary disposition as to plaintiff's statutory claims under MCL 554.139. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Amy Ronayne Krause