# STATE OF MICHIGAN

# COURT OF APPEALS

TRACEY L. RUDDER,

        Plaintiff-Appellant,

v

JACKIE EASTER,

        Defendant-Appellee.

UNPUBLISHED
January 10, 2017

No. 330165
Genesee Circuit Court
LC No. 14-103078-NI

Before: BOONSTRA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff appeals by right an order granting summary disposition in favor of defendant pursuant to MCR 2.116(C)(10) in this third-party no-fault action. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On November 8, 2011, plaintiff was stopped at a red light at the intersection of East Bristol Road and South Grand Traverse Boulevard in Burton, Michigan when she was rear-ended by defendant. Three months before the accident, plaintiff had been referred to a specialist, Dr. Rama Rao, by her primary care physician, Dr. John Stoker, for help with the management of severe neck and lower back pain. As of August 9, 2011, plaintiff reported to Dr. Rao that she had been "experiencing persistent severe lower back pain and cervical neck pain since an accident at home" in June 2011, and that her pain level on that date was a 10/10 on a 0-10 pain scale. Dr. Rao assessed plaintiff as having lumbar degenerative disk disease, lumbar spondylosis, cervical degenerative disk disease, and cervical spondylosis, among other things. Dr. Rao treated plaintiff with epidural steroid injections in her lumbar and cervical regions in August 2011. On November 3, 2011, five days before the accident, plaintiff again saw Dr. Rao and reported "severe persistent cervical neck pain that radiates to shoulders associated with numbness" and "persistent severe low back pain." Dr. Rao ordered a CT scan of plaintiff's cervical spine, and prescribed additional injections and physical therapy. On November 11, 2011, three days after the accident, plaintiff underwent the CT scan of her cervical spine that Dr. Rao had ordered. This scan revealed no acute fractures or dislocations and found only "mild degenerative changes" in parts of plaintiff's spine. Plaintiff saw Dr. Rao twice in November and twice in December 2011 for injections; the records reveal no mention of the accident that had occurred on November 8, 2011.

-1-

Dr. Stoker took X-rays of plaintiff's spine the day after the accident; the X-rays also did not reveal any fractures or dislocations. Plaintiff visited a chiropractor as well; he informed her that she had suffered whiplash and referred her to physical therapy. Ultimately, plaintiff's attorney[1] referred her to the Michigan Head & Spine Institute (MHSI). Records from late 2012 and early 2013 indicate that MHSI physicians concluded that plaintiff suffered from severe neck and lower back pain, disc spurs and herniations in various vertebrae, and nerve root irritations. In her October 30, 2012 initial MHSI patient information form, plaintiff reported that her pain, and the problem for which she was being seen, started on "11/8/11" as the result of the auto accident. Plaintiff saw Dr. Robert Farhat (an interventional pain management physiatrist) of MHSI on that date, and Dr. Farhat took a medical history that indicated that plaintiff was experiencing "neck and low back pain," that she had been "involved in a motor vehicle accident on 11/08/11," that "[s]ince that time she has had severe neck pain, headaches, and upper extremity pain," that she "did have issues prior to this incident with her low back," but that "the accident made her symptoms worse." She later saw Dr. Fernando Diaz (a neurosurgeon) of MHSI, whose records reflect a medical history indicating that plaintiff developed "the onset of neck and back pain radiating" to both her upper and lower extremities, and that these were symptoms "[r]esulting from the accident."

Plaintiff underwent two independent medical examinations, one by Dr. Robert Levine and one by Dr. Paul Drouillard. After both a physical examination and a review of plaintiff's medical records, Dr. Levine opined that plaintiff's spondylosis was not related to the accident. Instead, Dr. Levine stated that plaintiff's cervical and lumbar conditions were

> slowly progressive, it is an ongoing degenerative process that involves the spine. This patient has spondylosis in both her cervical and lumbar spine. She has disease at multiple levels. There is also literature that shows a rear-end impact does not cause ruptured discs. I do feel that in review of the records, she was in a minor crash and that there is no problem that I can directly attribute to the crash.

Similarly, before viewing the results of plaintiff's post-accident MRIs, Dr. Drouillard opined, "from a clinical standpoint, I see no evidence of a functional impairment or injury related to the event of November 8, 2011." After viewing plaintiff's MRI films, Dr. Drouillard did not change his opinion.

On June 17, 2013, Dr. Diaz stated in a letter written to plaintiff's attorney, and in response to Dr. Levine's independent medical evaluation, "Resulting from the accident, [plaintiff] developed the immediate onset of neck and back pain, which was not preexisting." Further, he opined that plaintiff's "cervical spondylitic changes and the [cervical and lumbar] herniated discs were either caused or significantly aggravated by the motor vehicle accident on November 8, 2011." He indicated that he arrived at this conclusion based on his understanding that plaintiff did not have back and neck symptoms before the accident. Specifically, he stated:

---

[1] The referring attorney was not the attorney who represented plaintiff during her deposition and at the summary disposition hearing.

I do not believe that [plaintiff's] problem is a degenerative problem in the strict sense, since she was completely asymptomatic prior to the motor vehicle accident and her symptoms have all occurred as a direct result of the motor vehicle accident on November 8, 2011.

The following day, June 18, 2013, plaintiff underwent surgery on her cervical spine. Dr. Diaz performed the surgery. On the same day, Dr. Farhat wrote a letter directed To Whom It May Concern, also in response to Dr. Levine's independent medical evaluation, opining that plaintiff's preexisting condition, namely issues with both her neck and lower back, were exacerbated by the accident. He noted that "as far as I understood [plaintiff] really did not seek consistent treatment for any cervical spine pain prior to this auto accident," that her "cervical spine was not an issue until the accident," and that her preexisting back symptoms had returned to their "previous baseline" before the accident, and concluded that "[t]here was definitely a functional change since the automobile accident that required consistent treatment and again ultimate surgery."

Plaintiff filed suit in 2014, alleging that defendant had negligently operated her vehicle, causing her injury or aggravation of preexisting physical conditions. After discovery, defendant moved the trial court for summary disposition pursuant to MCR 2.116(C)(10). Defendant argued, relevant to this appeal, that plaintiff had significant neck and back issues before the accident, and that Drs. Diaz and Farhat were not given plaintiff's full, accurate medical history and thus their opinions concerning the cause of plaintiff's condition should not be given weight. Plaintiff argued that, conflicting medical testimony at least created a question of fact for the jury.

The trial court initially issued an order granting summary disposition in favor of defendant without prejudice, but providing that the order would be effective 45 days after the hearing, thereby allowing for additional discovery in the interim. The order could be converted into either an order dismissing the case with prejudice, or an order denying the motion for summary disposition, depending on whether plaintiff came back with more discovery linking her post-accident condition to the accident. The trial court ultimately granted defendant's motion for summary disposition and dismissed the case. This appeal followed.

## II. STANDARD OF REVIEW

On appeal, plaintiff argues that the trial court erred by granting defendant's motion for summary disposition. We review de novo a trial court's grant or denial of a motion for summary disposition. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). A motion for summary disposition brought pursuant to MCR 2.116(C)(10) should be granted "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law[ ]" after a review of all "the pleadings, admissions, and other evidence submitted by the parties[,] [viewed] in the light most favorable to the nonmoving party." *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 582-583; 794 NW2d 76 (2010). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Id*.

### III. ANALYSIS

Plaintiff argues that because physicians who either treated or evaluated plaintiff after the accident offered differing opinions regarding the nature and extent of plaintiff's injuries, a genuine issue of material fact exists relating directly to whether plaintiff suffered from an objectively manifested impairment because of the accident. Under the circumstances of this case, we disagree.

Michigan's no-fault insurance act, MCL 500.3101 *et seq.*, imposes a threshold injury requirement for recovery in third party automobile negligence actions. MCL 500.3135(1). Specifically, a plaintiff must demonstrate that because of a defendant's ownership, maintenance, or use of a motor vehicle, the plaintiff has suffered "death, serious impairment of a body function, or permanent serious disfigurement." MCL 500.3135(1). " 'Serious impairment of a body function' means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). "[W]hether a serious impairment of body function has occurred is a question of law for the court to decide unless there is a factual dispute regarding the nature and extent of injury and the dispute is relevant to deciding whether the standard is met." *McCormick v Carrier*, 487 Mich 180, 191; 795 NW2d 517 (2010). "If there is a material factual dispute regarding the nature and extent of the person's injuries, the court should not decide the issue as a matter of law." *McCormick*, 487 Mich at 193–194.

In *McCormick*, 487 Mich at 195, our Supreme Court held that to demonstrate a serious impairment of body function, a plaintiff must show: "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." With regard to the first *McCormick* prong, a plaintiff must show that injuries resulting from a vehicle accident were "evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *Id*. at 196. "[A]n "objectively manifested" impairment is commonly understood as one observable or perceivable from actual symptoms or conditions." *Id*. "[W]hen considering an impairment, the focus is not on the injuries themselves, but how the injuries affected a particular body function." *Id*. Further, "the aggravation or triggering of a preexisting condition can constitute a compensable injury." *Fisher v Blankenship*, 286 Mich App 54, 64; 777 NW2d 469 (2009); see also *Wilkinson v Lee*, 463 Mich 388, 395; 617 NW2d 305 (2000). A degenerative condition can be exacerbated by subsequent injury such that it constitutes an impairment of a body function. *Washington v Van Buren County Road Comm*, 155 Mich App 527, 529-530; 400 NW2d 668 (1986). The inquiry is whether plaintiff suffered an aggravation or a triggering of the symptoms associated with the preexisting condition *because of* the accident. *Fisher*, 286 Mich App at 63.

In this case, plaintiff's preexisting neck and lower back pain was uncontested. The issue at summary disposition was whether plaintiff was injured by the accident, or whether her preexisting condition was exacerbated by the accident such that recovery was allowable under MCL 500.3135. Thus, although plaintiff presents the issue as relating to whether the serious impairment of a body function threshold of MCL 500.3135 was met, the real issue (as the trial court found) is one of causation.

We conclude that, even viewing the evidence in the light most favorable to the non-moving party, *BC Tile & Marble Co*, 288 Mich App at 582-583, plaintiff has not established a link between the accident and her post-accident condition, either as an injury caused by the accident or a preexisting condition that was exacerbated by the accident. The only medical providers who opined that plaintiff's condition was caused or exacerbated by the accident were Dr. Diaz and Dr. Farhat of MHSI; however, they specifically stated that their opinion that plaintiff's condition was not strictly degenerative was informed by their understanding that plaintiff was "completely asymptomatic" (Dr. Diaz) or that her back symptoms had returned to their "previous baseline" and her cervical spine was "not an issue" (Dr. Farhat) before the accident. Those beliefs are flatly contradicted by the medical records submitted to the trial court, which records reveal a long history of both back and neck pain; in fact, plaintiff reported significant back and neck pain to Dr. Rao a mere five days before the accident. Although scans conducted in March and June 2012 and February 2013 did reveal abnormalities in plaintiff's back and spine that Dr. Diaz determined necessitated surgical intervention, plaintiff presented no evidence apart from the opinion of Dr. Diaz and Dr. Farhat (which were based on the mistaken understandings noted above) that the accident had caused these conditions. By contrast, two independent medical examiners, who had not only examined plaintiff but had additionally reviewed her medical records, concluded that plaintiff's condition was a degenerative one that was not caused or exacerbated by the accident. Additionally, plaintiff's back and neck treatment by Dr. Rao pre-dated and then essentially continued as normal directly after the accident. Therefore, plaintiff has failed to advance evidence of an objective impairment caused by the accident.

Based on the foregoing, we hold that plaintiff has not established that a genuine issue of material fact exists regarding whether the accident caused or exacerbated plaintiff's preexisting injuries sufficient to satisfy *McCormick's* first prong. *McCormick*, 487 Mich at 195. Thus, the trial court did not err by granting summary disposition in favor of defendant.

Affirmed. As the prevailing party, defendant may tax costs. MCR 7.219(A).


/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly