# STATE OF MICHIGAN

# COURT OF APPEALS

WARREN C. CORYELL, JR., and CHASITY
CORYELL, individually and on behalf of
WARREN C. CORYELL III,

        Plaintiffs-Appellants,

v

HURLEY MEDICAL CENTER,

        Defendant-Appellee.

UNPUBLISHED
September 27, 2018

No. 340163
Genesee Circuit Court
LC No. 16-107019-NO

Before: TUKEL, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

Plaintiffs Warren Coryell, Jr. and Chasity Coryell are deaf individuals, and Chasity is also blind. When they sought medical services for their minor child at defendant's hospital, they requested in-person interpreters. Instead, defendant provided an interpreter through Video Remote Interpreting (VRI), by which an interpreter communicates with the doctor and patient— or in this case, the patient's parent—from a remote location through a video screen. Plaintiffs alleged that the VRI service was ineffective and that defendant failed to accommodate their disabilities under the Persons with Disabilities Civil Rights Act (PWDCRA), 37.1101 *et seq*., and Title III of the American's with Disabilities Act (ADA), 42 USC 12181 *et seq*. The trial court granted defendant summary disposition under MCR 2.116(C)(10), finding it made reasonable accommodations.[1] On appeal, plaintiffs argue that the trial court erred in granting defendant summary disposition because there is a question of fact about whether defendant accommodated their disabilities. Specifically, plaintiffs contend that there is a question of fact as to whether defendant provided the means for "effective communication." We agree and therefore reverse the trial court and remand for further proceedings consistent with this opinion.[2]

---

[1] The trial court also granted defendant summary disposition of plaintiffs' claim of negligent infliction of emotional stress. Plaintiffs do not appeal that ruling.

[2] We review de novo the trial court's grant of summary disposition under MCR 2.116(C)(10). See *Peden v Detroit*, 470 Mich 195, 200-201; 680 NW2d 857 (2004). Summary disposition under that subrule is appropriate where "there is no genuine issue as to any material fact, and the

-1-

# I. BACKGROUND

Around midnight, plaintiffs took their 2½-year-old son to defendant's hospital. According to plaintiffs, the child had been continuously vomiting. In his deposition, Warren testified that he informed defendant upon arrival via handwritten notes that (1) he required a live American Sign Language (ASL) interpreter, (2) Chasity required a Tactile American Sign Language (TASL) interpreter, and (3) both plaintiffs required interpreters from Communication Access Center (CAC) as opposed to the company defendant contracted with—Bromberg & Associates, LLC (Bromberg). Warren testified that he did not want to use Bromberg because he had "problems" in dealing with their interpreters in the past. Defendant told Warren that he would be responsible for paying for a CAC interpreter, and he agreed to do so. However, CAC did not have an interpreter available. Defendant then contacted Bromberg, who could not provide an in-person interpreter until the morning. Warren testified that he reluctantly agreed to use the VRI service provided through Bromberg rather than wait until the morning.

Warren was "disgusted with the quality" of the VRI service, found the colors in the video to be distracting, and had difficulty understanding the interpreter. He testified that the video screen turned off and on several times and at one point "crashed." He also explained that it was difficult to follow the ASL interpretation because he was trying to interpret for his wife, presumably through TASL. Warren said that he asked the interpreter to "back up" when he missed the interpretation but that the interpreter "just kept on going with the interpretation." Warren said that some of the doctor's statements were not communicated to him as a result. Defendant did not provide evidence contradicting Warren's version of those events. After the VRI session ended, the child was examined and discharged.

Plaintiffs filed a complaint pursuant to the PWDCRA and the ADA, alleging that defendant failed to accommodate their disabilities. Defendant moved for summary disposition, arguing that the accommodations were reasonable under the circumstances. At the motion hearing, the trial court agreed with defendant:

> [I]t appears to the Court, from everything I've read, that reasonable accommodation was made. And just because the plaintiffs don't like the services that were provided that does not mean that the services were not provided within the meaning of reasonable accommodations.

The trial court granted defendant's motion and dismissed plaintiffs' claims with prejudice. Plaintiffs now appeal, contending that the trial court erred in not applying ADA regulations and that material issues of fact existed that precluded summary disposition. We agree.

---

moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 582-583; 794 NW2d 76 (2010).

## II. DISCUSSION

Article III of the PWDCRA prohibits places of public accommodation from denying an individual "full and equal enjoyment" of services because of a disability that is unrelated the individual's ability to use those services. MCL 37.1302(a). A place of public accommodation must accommodate a person with a disability "unless the [place of public accommodation] demonstrates that the accommodation would impose an undue hardship." MCL 37.1102(2). An accommodation is inadequate if it does not allow the person with a disability equal enjoyment of the defendant's services. *Cebreco v Music Hall Center for the Performing Arts, Inc*, 219 Mich App 353, 360; 555 NW2d 862 (1996). To make a prima facie case under the PWDCRA, a plaintiff must show that the defendant failed to accommodate a disability. If that is accomplished, then the defendant bears the burden of producing evidence that the accommodation would impose an undue hardship. MCL 37.1210(1); *Hall v Hackley Hosp*, 210 Mich App 48, 54; 532 NW2d 893 (1995).

Title III of the ADA also prohibit places of public accommodation from discriminating against individuals with disabilities. 42 USC 12182(a). Title III provides specific prohibitions of discrimination. 42 USC 12182(b)(2)(A)(*i*)-(*v*). Pertinent to this case, discrimination includes

> a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden. [42 USC 12182(b)(2)(A)(*iii*).]

The ADA defines auxiliary aids and services, 42 USC 12103(1)(A)-(D), and a federal regulation expands on those definitions. The regulation provides in part that auxiliary aids and services include "[q]ualified interpreters on-site or through video remote interpreting (VRI) services[.]" 28 CFR 36.303(b)(1). The regulation contains an "[e]ffective communication" requirement, providing that

> [a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. This includes an obligation to provide effective communication to companions who are individuals with disabilities. [28 CFR 36.303(c)(1).]

"The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 CFR 36.303(c)(1)(*ii*). Ultimately, the place of public accommodation chooses the type of auxiliary aid or service, but that choice must result in effective communication. *Id*. "To be ineffective communication, it is sufficient if the patient experiences a real hindrance, because of her disability, which affects her ability to exchange material medical information with

her health care providers." *Silva v Baptist Health South Florida, Inc*, 856 F3d 824, 836 (CA 11, 2017).[3]  Discrimination occurs within the meaning of the ADA when a covered entity fails to provide auxiliary aids or services necessary to ensure effective communication.  *Id*. at 831.  "Generally, the effectiveness of auxiliary aids and/or services is a question of fact precluding summary judgment."  *Chisolm v McManimon*, 275 F3d 315, 327 (CA 3, 2001).

To begin, we read the trial court's finding that defendant made reasonable accommodations for plaintiffs' disabilities as tantamount to a ruling that plaintiffs did not prove a prima facie case of failure to accommodate. We agree with the trial court that mere subjective dissatisfaction with an accommodation is insufficient to establish a prima facie case, and we acknowledge that VRI is generally considered an effective accommodation for a deaf individual under the relevant regulations.  However, if the quality of the VRI in a particular case is such that it does not provide effective communication, a prima facie case may be established.[4]

That was the case in *Silva*, 856 F3d at 829-830, in which the plaintiffs were deaf individuals and the defendants' hospitals used VRI to communicate with them.  The plaintiffs averred that the VRI machine routinely malfunctioned.  *Id*. at 830.  Sometimes the device would not work at all.  *Id*. at 837.  Other times it would "freeze" and "there would be a huge lag time where it would seem like the interpreter was in slow motion."  *Id*. at 838.  The Eleventh Circuit held that there was sufficient evidence for the plaintiffs' effective-communication claim to survive summary judgment.  *Id*.  The court was mindful that ADA regulations provide quality standards for VRI services.  *Id*. at 838 n 11.  The reason for these requirements is clear: "A deaf person must rely on the slight and sophisticated hand movements of the interpreter depicted on the screen, so when the screen image is unclear or becomes choppy, the message is disrupted."  *Id*. at 838.

We find *Silva* persuasive and analogous to this case.  Warren's deposition testimony regarding the quality of the VRI service he received creates a question of fact about whether his disability was accommodated and whether he received effective communication.  Warren testified that the video feed was of such low quality that the VRI was inadequate and ineffective.  Warren also testified that the interpreter ignored his requests to repeat certain interpretations despite the fact that Warren was simultaneously attempting to provide TASL interpretation for Chasity.

---

[3] We may rely on federal caselaw for its persuasive value.  *Churella v Pioneer State Mut Ins Co*, 258 Mich App 260, 268; 671 NW2d 125 (2003).

[4] "ADA regulations expressly provide that, when a covered entity 'chooses to provide qualified interpreters via VRI service,' it 'shall ensure that it . . . delivers high-quality video images that do not produce lags, choppy, blurry or grainy images, or irregular pauses in communication.' "  *Silva*, 856 F3d at 838 n 11, quoting 28 CFR 36.303(f) and (f)(1).  "The VRI must also have '[a] sharply delineated image.' "  *Id*., quoting 28 CFR 36.303(f)(2).

The evidence also establishes a question of fact about whether defendant accommodated Chasity's disability because she was not provided a TASL interpreter. Defendant argues that a place of public accommodation can rely on family members of the person with the disability to satisfy its obligations under the ADA. However, federal regulations[5] expressly disavow this approach. "A public accommodation shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication, except" when there is "an emergency involving an imminent threat to the safety or welfare of an individual or the public." 28 CFR 36.303(c)(3)(*i*).[6] Thus, it cannot be said that defendant accommodated Chasity's disabilities as a matter of law, particularly when Warren contends that he was unable to effectively follow the ASL's interpretation and translate for Chasity at the same time.

In sum, viewing the evidence in a light most favorable to the nonmoving party, material questions of fact exist as to whether defendant's VRI service provided plaintiffs effective communication.[7] Accordingly, the trial court erred in granting defendant's motion for summary disposition and dismissing plaintiffs' complaint.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro

---

[5] Given their similarity, the ADA and PWDCRA "require essentially the same analysis, and in the predominant number of cases, the result under either statute may well be the same." *Peden*, 470 Mich at 217 (emphasis removed). However, "federal laws and regulations are not binding authority on a Michigan court interpreting a Michigan statute" and therefore a PWDCRA analysis may not necessarily parallel one under the ADA. *Id*. In this case, the federal regulations are undoubtedly relevant to plaintiffs' ADA claim. Even if the regulations do not govern the PWDCRA claim, we nonetheless conclude that plaintiffs established a question of fact about whether defendant accommodated their disabilities.

[6] Defendant asks us to hold that any emergency-room visit be deemed "an emergency involving an imminent threat to the safety or welfare of an individual." We decline to do so. If that were intended, it certainly could have been clearly set forth in the relevant regulation. And defendant has not provided us with any caselaw supporting this extraordinarily broad interpretation of the exception.

[7] Because the trial court did not address whether requiring defendant to provide more effective accommodations would have been unduly burdensome under the circumstances, we make no comment on that matter.